CECO CORPORATION, Appellant,

v.

Norman D. COLEMAN, Appellee.

No. 80–483.

District of Columbia Court of Appeals.

Argued March 10, 1981.

Decided Jan. 27, 1982.

Richard W. Galiher, Washington, D. C., with whom Richard W. Galiher, Jr., Washington, D. C., was on the briefs, for appellant.

Wayne M. Mansulla, Washington, D. C., with whom Kevin B. Byrd and Robert A. Taylor, Jr., Washington, D. C., were on the brief, for appellee.

Before HARRIS and FERREN, Associate Judges, and GALLAGHER, Associate Judge, Retired.

GALLAGHER, Associate Judge, Retired:

On April 17, 1975, appellee Norman Coleman (Coleman), then a construction worker, was injured while working on the erection of the East Wing of the National Gallery of Art. As a consequence of his job-related injury, Coleman was paid workers' compensation benefits by his employer, the Charles H. Tompkins Company (Tompkins), the general contractor for the East Wing construction project. Coleman later brought suit against appellant, Ceco Corporation (Ceco), a subcontractor on the East Wing job, alleging that it and its employees had negligently caused or contributed to his injury. After trial, a jury awarded Coleman $150,000, judgment was entered thereon, and Ceco appealed.

Three main issues are presented by this appeal. First, Ceco contends that it was entitled to a directed verdict because the evidence established that it was the negligence of Tompkins, Coleman's employer, which proximately caused his injury. Second, Ceco contests several instructions given to the jury. Finally, Ceco argues that it was entitled to a credit of one-half of the verdict in light of the trial court's post-verdict determination that Tompkins, Coleman's employer, was concurrently negligent. We affirm.

### I.

Ceco was employed by Tompkins to provide shoring and support for overhead concrete floors to be installed by Tompkins, and was also required to remove its bracing (a process called "stripping") once the concrete had hardened. On the day before the accident, Ceco had commenced stripping an area but, unable to complete the operation before the day's end, had allegedly left considerable debris on the floor as well as pieces of shoring stuck to the ceiling. Early the next day, Tompkins sent several of its employees, including appellee Coleman, into this area to partially reshore the ceiling, as Tompkins wished to roll several heavy concrete buggies over the floor overhead. While the workmen were reinstalling so-called Ellis jacks, some of the material stuck to the ceiling suddenly came loose. Coleman sustained a compound fracture of the left leg when he tripped over debris on the floor in his attempt to escape a falling beam.

Extensive evidence was presented by both parties in an effort to establish liability for the accident. Coleman's evidence showed that Ceco had suspended its stripping operations without removing debris from the floor and remnants of shoring material from the ceiling, and had left the site without roping off the area or posting warning signs; safety experts testified that these actions violated applicable safety codes. Ceco, for its part, conceded that it had left material suspended from the ceiling but sought to prove that the material was securely adhered to the ceiling surface and posed no danger of falling, and that, in any event, the floor area immediately below the suspended material was cordoned off with a rope. Ceco denied, however, that it had left the debris on the floor over which Coleman had tripped, suggesting through its witnesses that the floor debris in fact belonged to Tompkins. Ceco sought to explain any failure to clear the area by presenting evidence that Tompkins' rushed reshoring operation had prevented Ceco from reentering the area to complete its job. Finally, Ceco argued that the proximate cause of the accident was Tompkins' negligence in failing itself to clear the floor area before beginning work and in disturbing the ceiling braces while installing the Ellis jacks. Ceco now renews the latter argument on appeal, contending that it was error for the trial court to have denied its motion for a directed verdict on the question of the proximate cause of Coleman's injury.

In acting on a defendant's motion for a directed verdict, the trial court must view the evidence in the light most favorable to the plaintiff, and may only take the case from the jury if no reasonable man could find the defendant liable. *Courtney v. Giant Food, Inc.*, D.C.App., 221 A.2d 92, 93 (1966). In reviewing the trial court's denial of the motion, we are governed by the same standard. *Gaither v. District of Columbia*, D.C.App., 333 A.2d 57, 59 (1975).

See *Order of Ahepa v. Travel Consultants, Inc.*, D.C.App., 367 A.2d 119, 125 (1976), *cert. dismissed*, 434 U.S. 802, 98 S.Ct. 30, 54 L.Ed.2d 60 (1977). Where the evidence is such that reasonable men could differ as to negligence and causation, the question of liability is properly put before the jury. See *Baker v. D. C. Transit System, Inc.*, D.C.App., 248 A.2d 829, 831 (1966).

We are satisfied that the evidence, viewed in the light most favorable to appellee Coleman, permitted the jury reasonably to infer that Ceco had left the site in disarray and without adequate warning or barrier posted, and that these acts of negligence proximately caused Coleman's injury. "Proximate cause is . . . a test of whether the injury is the natural and probable consequence of the negligence or wrongful act and ought to be foreseen in light of the circumstances." *Spar v. Obwoya*, D.C.App., 369 A.2d 173, 178 (1977); see *Wagshal v. District of Columbia*, D.C.App., 216 A.2d 172, 175 (1966). The negligent act of a third party will operate as a superseding cause of the plaintiff's harm only where the original actor should not have anticipated that act. *Sears, Roebuck & Co. v. Donovan*, D.C.App., 137 A.2d 716, 719 (1958); *Rieser v. District of Columbia*, 183 U.S.App.D.C. 375, 392, 563 F.2d 462, 479 (1977), *reinstated after rehearing*, 188 U.S.App.D.C. 384, 580 F.2d 647 (1978) (en banc); Restatement (Second) of Torts § 447 (1965). Here, Coleman presented evidence that Ceco did not rope off the area in question or post warning signs. Indeed, the only witness for Ceco to contradict this evidence testified only that the area immediately under the suspended ceiling material was roped off; he expressly denied that the pile of debris over which Coleman tripped was inside the rope barrier. A Tompkins' construction superintendent also testified that he had gotten express assurances from a Ceco representative that the shoring material adhered to the ceiling did not pose a hazard.[1] If

---

1. Ceco argues that it was error for the trial court to have permitted counsel for Coleman to use the Tompkins' superintendent's written record of the conversation in cross-examining

the Ceco foreman alleged to have given these assurances. Ceco urges that the written record should first have been identified when the Tompkins' superintendent was on the stand so

believed, this evidence would support the jury's inference that Ceco should have anticipated that employees of Tompkins or some other contractor might enter the area and face the risk of being injured due to the hazardous condition of the floor and ceiling. It was not necessary for the jury to conclude that Tompkins was innocent of all wrongdoing in order for it to find Ceco liable; indeed, the jury could well have agreed with Ceco that Tompkins had been negligent, yet declined to find that Ceco should not have foreseen that negligence. *See Rieser, supra* at 392–93 & nn. 93–95, 563 F.2d at 479–80 & nn. 93–95. In short, on the facts of this case, the trial judge properly submitted the question of causation to the jury.

## II.

█ Ceco's second contention is that the trial judge's charge to the jury was erroneous in three particulars: first, in instructing the jury that violation of a safety statute or regulation was negligence as a matter of law; second, in instructing on concurrent causation; and third, in charging the jury that it could award Coleman damages for any temporary or permanent disfigurement or deformity. We hold that Ceco's failure to comply with Super.Ct.Civ.R. 51 prevents us from noticing any error in giving the negligence per se concurrent causation instructions. Furthermore, while there are certain deficiencies in the record, our re-

view leads us to conclude that any error in that regard was harmless.[2]

### a. *Negligence* per se

█ The "general rule" in this jurisdiction is that "where a particular statutory or regulatory standard is enacted to protect persons in the plaintiff's position or to prevent the type of accident that occurred, and the plaintiff can establish his relationship to the statute, *unexplained* violation of that standard renders the defendant negligent as a matter of law." *Richardson v. Gregory,* 108 U.S.App.D.C. 263, 266, 281 F.2d 626, 629 (1960) (emphasis added). *See generally* W. Prosser, The Law of Torts § 36 (4th ed. 1971); 2 F. Harper & F. James, The Law of Torts § 17.6 (1956). If a party charged with statutory or regulatory negligence produces competent evidence tending to explain or excuse his or her violation of the statutory or regulatory standard, the jury is properly instructed, upon proper request of the party, that the violation is evidence of negligence, but not negligence as a matter of law. *See Hecht Co. v. McLaughlin,* 93 U.S.App.D.C. 382, 385–86, 214 F.2d 212, 215–16 (1954). *See also Karlow v. Fitzgerald,* 110 U.S.App.D.C. 9, 13, 288 F.2d 411, 415 (1961); *Whetzel v. Jess Fisher Management Co.,* 108 U.S.App.D.C. 385, 392, 282 F.2d 943, 950 (1960).

In this case, the trial court instructed the jury that a District of Columbia safety stat-

---

that Ceco could then have explored the statement's competency. This contention is without merit. Coleman never attempted to introduce the writing itself into evidence. The Tompkins' construction superintendent recounted the conversation from memory, and the veracity of this account was not challenged by Ceco on cross-examination. Instead counsel for Ceco later asked the Ceco foreman on direct whether he recalled having such a conversation, and the witness said he did not. It was only then, on cross-examination of the Ceco foreman, that counsel for Coleman handed the witness a copy of the Tompkins' superintendent's record of the conversation, and asked, over objection, if it refreshed his recollection; when the witness said it did not, the line of questioning ceased.

Even were we to find something objectionable in this manner of questioning—and we do not—we are satisfied that any error would be

harmless. *See Kotteakos v. United States,* 328 U.S. 750, 757 n.9, 762–64, 66 S.Ct. 1239, 1244 n.9, 1246–47, 90 L.Ed. 1557 (1946); 11 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 2883 (1973).

2. Ceco also contests the trial court's refusal to instruct the jury on ordinary contributory negligence and assumption of risk. We conclude that, on the facts of this case, the trial judge was correct in charging the jury instead—in accordance with *Martin v. George Hyman Construction Co.,* D.C.App., 395 A.2d 63 (1978)—that only aggravated negligence or assumption of risk approaching intent on the part of Coleman would bar recovery. We decline Ceco's invitation to reconsider *Martin,* and are, in any event, powerless to do so as a hearing division of this court.

ute [3] and certain regulations of the Occupational Safety and Health Administration (OSHA) [4] fixed the duty of care owed by one in Ceco's circumstances, and that the violation of either the statute or the regulation by Ceco was negligence as a matter of law. The court's charge was taken verbatim from Standardized Jury Instruction No. 60. *See* Young Lawyers Section of the Bar Association of the District of Columbia, Standardized Jury Instructions for the District of Columbia p. 46 (1968 rev. ed.) [hereinafter cited as 1968 Jury Instructions].[5]

Counsel for Ceco timely objected to the court's proposal to give this instruction, but on the sole ground that there was no basis for it "under the facts of this case, and under the decisions which are cited in support of [Standardized Jury Instruction No. 60]." Counsel for Ceco did not at the time propose, as an alternative, that the trial court give Standardized Jury Instruction No. 61, *see* 1968 Jury Instructions, which incorporates the doctrine of "justifiable violation" discussed above,[6] but now contends on appeal that it was entitled to such an

**3.** D.C.Code 1973, § 36–438(a), reads:

Every employer shall furnish a place of employment which shall be reasonably safe for employees, shall furnish and use safety devices and safeguards, and shall adopt and use practices, means, methods, operations and processes which are reasonably safe and adequate to render such employment and place of employment reasonably safe.

**4.** 29 C.F.R. pt. 1926 (1980)—entitled "Safety and Health Regulations for Construction" and effective April 24, 1971—contained the following applicable provisions:

§ 1926.25(a): During the course of construction, alteration, or repairs, form and scrap lumber with protruding nails, and all other debris, shall be kept cleared from work areas, passageways, and stairs, in and around buildings or other structures.

§ 1926.252(c): All scrap lumber, waste material, and rubbish shall be removed from the immediate work area as the work progresses.

§ 1926.701(a)(3): Stripper forms and shoring shall be removed and stockpiled promptly after stripping, in all areas in which persons are required to work or pass....

**5.** *Standard Jury Instruction No. 60 reads:*

At the time that the incident under consideration occurred the following regulation/statute was in effect in the District of Columbia:

This regulation/statute sets out the applicable *standard of conduct which itself fixes* the duty of care required by one in the same situation as the plaintiff/defendant. You are instructed, therefore, that the violation of this regulation/statute, if any, by the plaintiff/defendant is negligence as a matter of law.

Whether or not this negligence caused the injury, however, is a separate question. Negligence alone does not equal liability. Unless this negligence proximately caused the injury, the fact of its existence is of no consequence. *Stated another way, if the violation* created a hazard which the regulation/statute was intended to avoid and which does in fact bring about the harm to plaintiff which

the regulation/statute was intended to prevent, the violation is a legal cause of the harm.

You must, therefore, find that the regulation/statute was violated and that this violation was a proximate cause or one of the proximate causes of the injury to the plaintiff before you can determine liability or contributory negligence. [1968 Jury Instructions.]

The Bar Association's most recent version of the standardized negligence *per se* instruction is considerably briefer than that in the 1968 edition, and offers little guidance as to when that charge, rather than the instruction that the violation of a statutory or regulatory standard is only evidence of negligence, is applicable. *See* Young Lawyers Section of the Bar Association of the District of Columbia, Standardized Civil Jury Instructions for the District of Columbia, No. 5–8, at p. 42 (1981 rev. ed.) [hereinafter cited as 1981 Jury Instructions].

**6.** Standardized Jury Instruction No. 61 reads as follows:

At the time that the incident under consideration occurred the following regulation/statute was in effect in the District of Columbia:

This regulation/statute sets out the applicable standard of conduct which, of itself normally fixes the duty of care required by a person in the same situation as the plaintiff/defendant. Ordinarily, the unexplained violation of this regulation/statute is negligence as a matter of law. However, in this case, the plaintiff/defendant has presented evidence which he claims excuses or justifies the violation. Therefore, the violation of this regulation/statute is only evidence of negligence which you may consider along with all the other evidence presented on that question.

Whether or not such negligence, if any, caused the injury is a separate question. Unless this negligence proximately caused the injury the fact of its existence is of no consequence. Stated another way, if the violation was not explained to your satisfaction and

instruction because it had "explained" its alleged violation of the safety statute and regulations. We decline to pass upon this argument.

■ Superior Ct.Civ.R. 51 provides that "[n]o party may assign as error the giving of or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, *stating distinctly the matter to which he objects and the grounds of his objection*" (emphasis added). The purpose of this rule is to give the trial judge an opportunity to reconsider and, if necessary, correct his proposed charge. *Montgomery v. Virginia Stage Lines, Inc.*, 89 U.S.App.D.C. 213, 216, 191 F.2d 770, 773 (1951); *Harlem Taxicab Association*, 89 U.S.App.D.C. 123, 125, 191 F.2d 459, 461 (1951). To fulfill this purpose, more than a general objection must be noted; the grounds of the objection must be "called to the attention of the trial court in such manner as to clearly advise it as to the question of law involved . . . ," *Montgomery v. Virginia Stage Lines, Inc., supra* at 216, 191 F.2d at 773, quoting *Williams v. Powers*, 135 F.2d 153, 156 (6th Cir. 1943), and must be "sufficiently specific to bring into focus the precise nature of the alleged error," *Palmer v. Hoffman*, 318 U.S. 109, 119, 63 S.Ct. 477, 483, 87 L.Ed. 645 (1943). In our view, the stated ground for Ceco's objection—that there was no factual or legal basis for the court's proposed charge—was too oblique to satisfy Rule 51 and preserve for our review the question of whether Ceco had adequately "explained" its violation. "[W]e find nothing in the record of the proceedings in the trial court to indicate that the trial court was in any way apprised of the particular matter relied on here for reversal." *Rogers v. Northern Rio Arriba Electric Cooperative, Inc.*, 580 F.2d 1039, 1042 (10th Cir. 1978).

■ While we have on occasion considered error raised for the first time on appeal where "it is apparent from the fact of the record that a 'miscarriage of justice' has occurred," *Weisman v. Middleton*, D.C. App., 390 A.2d 996, 1000 (1978) (citations omitted), *see, e.g., id.; Montague v. Henderson*, D.C.App., 409 A.2d 627 (1979); *Barnes v. Wheeler, Inc.*, D.C.Mun.App., 55 A.2d 83 (1947), we are not convinced that this is such a case. *See Mark Keshishian & Sons, Inc. v. Washington Square, Inc.*, D.C. App., 414 A.2d 834 (1980). What Ceco now urges as an "explanation" for its OSHA violation entitling it to an instruction based on Standardized Jury Instruction No. 61 (*see* note 6 *supra*)—that it did not have an opportunity to complete its stripping operation because Tompkins had moved into the area to commence reshoring—was fully presented, via evidence and argument, as a *defense* below. Ceco also vigorously contended that the statute and OSHA regulations bound Tompkins as well as itself. The charge actually given by the court, which was based on Standardized Jury Instruction No. 60 (*see* note 5 *supra*), instructed the jury that it was to determine both whether Ceco had in fact violated the statute and OSHA regulations, and whether that violation was the proximate cause of Coleman's injury. If the jury believed that Ceco had not been given fair opportunity to comply with the regulations, or that Tompkins was the responsible wrongdoer, it was open to the jury to absolve Ceco by finding either that there was simply no violation of the statute or regulations on its part, or that any violation by Ceco was superseded by a similar violation by Tompkins. Thus, while we cannot say that Ceco was in no way disadvantaged by the court's failure to give a charge based on Standardized Jury Instruction No. 61, we conclude that this failure did not cause a "miscarriage of justice."

---

created a hazard which the regulation/statute was intended to avoid and which does in fact bring about the harm to the plaintiff which the regulation/statute was intended to prevent, the violation is a legal cause of the harm.

You must, therefore, find that there was an unexplained or unjustified violation of the regulation/statute and that this violation was a proximate cause or one of the proximate causes of the injury to the plaintiff before you can determine liability (or contributory negligence). [1968 Jury Instructions.]

### b. Concurrent causation

In its charge to the jury, the trial court gave the standard instructions on proximate cause and concurrent causation[7] over Ceco's objection that the latter were inappropriate because Tompkins was not joinable as a defendant in the case.[8] Like the trial court, we find no merit to this argument, since it confounds the concepts of concurrent causation and joint and several liability. Tompkins' absence as a party defendant had no bearing on the question of whether it or Ceco caused Coleman's accident. Ceco also contends on appeal, however, that the trial judge unduly emphasized that the jury could find that *both* Tompkins and Ceco—rather than Tompkins alone—had caused Coleman's injury when the court departed from the standardized instruction with the following example:

> What that means here is that it's possible that the Tompkins Company could have been negligent, and it's possible that the Ceco Corporation could have been negligent, or it's possible that both of them could have been negligent. The Tompkins Company is not a part of this action, for reasons that need not concern you and should not concern you, but *if you find, or were to feel that the Tompkins Company was negligent, but you were also to feel that the Ceco Corporation was negligent, and that its negligence caused the injury to the plaintiff, then you should find in favor of the plaintiff against the Defendant, Ceco Corporation, quite apart from any negligence that may or may not have existed on the part of the Charles Tompkins Company.* [Emphasis added.]

Because no specific objection was raised at trial with respect to this portion of the charge, we defer to Super.Ct.Civ.R. 51 and decline to recognize any error on appeal.

**7.** The court gave Standardized Jury Instructions Nos. 64, 65, and 66. 1968 Jury Instructions.

**8.** The reasons for Tompkins' immunity from suit on account of Coleman's injury are detailed *infra*.

*See* discussion *supra.* *Cf. Wellman v. Jellison,* 593 F.2d 876 (9th Cir. 1979) (per curiam) (held, trial counsel's objection that instruction did not apply to the facts of the case did not preserve for appeal the question of that instruction's adequacy as a fair explanation of the law).

The trial judge would doubtless have been better advised to refrain from giving the italicized portion of the above example, for it suggests—contrary to the first, nonitalicized portion of the charge—that the jury was not permitted to find the negligence of Tompkins to have been the *sole* proximate cause of Coleman's injury. The trial court would have done better to explain to the jury that if it found that negligence of both Ceco and Tompkins caused Coleman's injury in fact, then it should return a verdict for Coleman unless it found that Ceco should not have foreseen Tompkins' negligence. *See Sears, Roebuck & Co. v. Donovan, supra* at 719; *Rieser v. District of Columbia, supra* at 392, 563 F.2d at 479.[9] But our rules of Superior Court practice place the onus on a party to insure that the court's charge presents the applicable law in the light most favorable to his case. This court will intervene only when a failure to do this creates the chance of a "miscarriage of justice." *See* discussion *supra.* Because we conclude that the trial court's charge was, as a whole, sufficient to instruct the jury as to the relevant legal principles involved, we decline to give dispositive weight to its minor inadequacies.

### c. Damages

The trial judge instructed the jury that one of the factors they could take into consideration in determining the measure of Coleman's damages was "[a]ny temporary or permanent disfigurement or deformity resulting to [Coleman], and any humiliation

**9.** When the trial court first asked counsel for their proposed jury instructions, counsel for Ceco stated that he desired "[o]nly the standardized instructions . . . plus an instruction on intervening cause." However, other matters were at that point attended to, and counsel never submitted an instruction on superseding cause to the court.

or embarrassment associated therewith." Counsel for Ceco had earlier objected, when the court proposed to give this instruction, that there had been no evidence that Coleman's injury had resulted in any type of cosmetic disfigurement or deformity. The trial judge responded that while he agreed there was no claim of permanent disfigurement or deformity, he interpreted Standardized Jury Instruction No. 180 [10] to permit recovery for the temporary disfigurement or deformity of wearing a cast and walking on crutches. Ceco, on appeal, renews its contention that the court's instruction was erroneous. We agree that the trial judge's expressed reason for giving the instruction was incorrect, but hold that any error in giving the instruction itself was harmless.

▮▮▮▮ "In laymen's language, to disfigure is "to make less complete, perfect or beautiful in appearance or character.'" *United States v. Cook,* 149 U.S.App.D.C. 197, 200, 462 F.2d 301, 304 (1972), quoting Merriam-Webster New International Dictionary 649 (3d ed. 1964). "Disfigurement" entails the impairment of a person's beauty, symmetry or appearance so as to render his or her external form unsightly, misshapen or imperfect. *Dombrowski v. Fafnir Bearing Co.,* 148 Conn. 87, 90, 167 A.2d 458, 461 (1961). Similarly, a "deformity" is described as a misshapen condition, an unnatural growth, or a distorted or misshapen body part or member. *People v. Lehrman,* 251 App.Div. 451, 452, 296 N.Y.S. 580, 582 (1937). Thus, while we agree that a disfig-

urement or deformity need not be permanent to be a compensable item of damage, *see United States v. Cook, supra* at 200, 462 F.2d at 304, we think it clear that a disfigurement or deformity must, by definition, inhere in the injured person's flesh. Plaster casts and crutches may cause a plaintiff discomfort or inconvenience for which money damages may be had,[11] but they do not, in and of themselves, disfigure or deform.

▮▮▮▮ It is elementary that an instruction should not be given if there is no evidence to support it. *Kasmer v. Sternal,* 83 U.S.App.D.C. 50, 52, 165 F.2d 624, 626 (1948); *Bowles v. Marsh,* D.C.Mun.App., 82 A.2d 135, 139 (1951). *See generally Mitchell v. Potomac Insurance Co.,* 183 U.S. 42, 22 S.Ct. 22, 46 L.Ed. 74 (1901). Hence, if, as Ceco claims, there was no evidence that Coleman's injury caused his leg to become unsightly or misshapen, the trial judge's charge was erroneous.[12] We are unable intelligently to assess this claim of error, however. "[T]he predicate for appellate review is a record of sufficient detail to allow this court to decide whether or not the trial court committed an error justifying reversal." *Thrower v. Harris Beauty Supply Co.,* D.C.App., 283 A.2d 825, 826 (1971) (per curiam). *See also Watwood v. Hall,* D.C.App., 349 A.2d 478, 479 (1975) (per curiam); *Franklin Investment Co. v. Boyd,* D.C.App., 201 A.2d 871, 872 (1964). While the recorded testimony of Coleman himself supports no claim of disfigurement or deformity, we note that the trial testimony of at least two

---

10. Standardized Jury Instruction 180, on which the court's charge was based, states that the jury may consider "[a]ny disfigurement or deformity resulting to [the plaintiff] and any humiliation or embarrassment associated therewith." (1968 Jury Instructions.) The most recent revision of the standardized instructions contains the identical wording. *See* Standardized Civil Jury Instruction 13–1 *in* 1981 Jury Instructions, *supra* at 143.

11. The trial judge included "[a]ny inconvenience or discomfort caused [Coleman] in the past" as a separate element of damage in his charge to the jury. This is in accordance with the Standardized Jury Instruction. *Cf. Snodgrass v. Cohen,* 96 F.Supp. 292, 295 (D.D.C. 1951) (plaintiff "should receive some recom-

pense for pain and suffering, as well as the discomfort and distress caused by being required to keep his leg in a plaster cast for a considerable period").

12. It was unnecessary for Coleman to present direct evidence of actual humiliation and embarrassment in order to justify the second portion of the challenged instruction. The jury could reasonably have inferred a degree of humiliation and embarrassment from the fact of a disfigurement or deformity. *See Bennett v. Haley,* 132 Ga.App. 512, 520, 208 S.E.2d 302, 309 (1974); *Swersky v. McPeek,* 214 Va. 253, 254, 199 S.E.2d 507, 508 (1973) (per curiam); *Beasley v. Bosschermuller,* 206 Va. 360, 367, 143 S.E.2d 881, 887 (1965).

doctors was not reproduced in the printed transcript. We cannot merely accept Ceco's contention on appeal that the testimony of the doctors provided no evidence of disfigurement or deformity.

In any event, if we assume *arguendo* that no evidence of disfigurement or deformity was presented below—and thus, that the challenged portion of the damages instruction was erroneous—we are satisfied that the error was harmless. The impact of the challenged portion of the charge must be ascertained in context, not in isolation. *See Curtis Publishing Co. v. Butts*, 388 U.S. 130, 156–57, 87 S.Ct. 1975, 1992–93, 18 L.Ed.2d 1094 (1967). Here, the assumedly improper language was only one of eight separate elements of damage, the enumeration of which was preceded by the qualification that "You *may* take into consideration *any of the following which you find, by a preponderance of the evidence*, to have resulted from the negligence of the Defendant" (emphasis added).[13] Furthermore, the judge elaborated on virtually all of these elements except disfigurement and deformity and their attendant humiliation or embarrassment. Finally, each of the elements was introduced by the word "any," thereby negating any implication that the trial judge believed any particular element of damage to have been established by the evidence. We have enough confidence in the intelligence and integrity of juries generally to believe that the jury here would have awarded Coleman damages for disfigurement and deformity only to the extent that such disfigurement and deformity had been proved. We do not regard the instruction as substantially prejudicial to Ceco. *See Bourne v. Washburn*, 142 U.S.App.D.C. 332, 334, 441 F.2d 1022, 1024 (1971).

### III.

Following the jury's verdict for Coleman, the trial court heard argument on the issue of whether Ceco was entitled to a credit of one-half of the verdict, pursuant to *Murray v. United States*, 132 U.S.App.D.C. 91, 405 F.2d 1361 (1968). Although the trial judge

found as a fact, as prescribed by *Murray*, that Tompkins and Ceco had been concurrently negligent, he declined to apply the so-called *Murray* credit to mitigate the judgment against Ceco alone on the ground, *inter alia*, that the *Murray* credit was only dictum. We agree in all respects with the trial judge's thorough analysis of this issue, and accordingly reject Ceco's contention that it was error to refuse to apply *Murray*.

In order to put the issue of the *Murray* credit in context, a short explanation of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–950 (1976), is necessary.

The LHWCA, which since 1928 has served as the workers' compensation law for private employees in the District of Columbia, D.C.Code 1973, § 36–501, requires all employers to secure the payment of prescribed benefits to their employees injured on the job, irrespective of fault. 33 U.S.C. § 904 (1976). As the price of this absolute and comprehensive protection, the employee is divested of his common-law right of action against his employer for negligence. The payment of workers' compensation benefits is the employer's exclusive liability. *Id.* §§ 905(a), 933(i). *See Federal Marine Terminals, Inc. v. Burnside Shipping Co.*, 394 U.S. 404, 413, 89 S.Ct. 1144, 1149, 22 L.Ed.2d 371 (1969). But the employee's right to proceed against allegedly negligent third parties is preserved by the LHWCA. *See* 33 U.S.C. § 933(a), (i) (1976). This preserved right of action for damages serves two related purposes regarded as salutary under the LHWCA: it enables the injured employee to secure full compensation for his injuries, and also helps to minimize the costs to employers (and ultimately, to consumers) of providing comprehensive protection. *See Potomac Electric Power Co. v. Wynn*, 120 U.S.App.D.C. 13, 15–16, 343 F.2d 295, 297–98 (1965). The latter purpose is accomplished by the LHWCA's requirement that an employee obtaining a judgment against a third party reimburse his employer for all benefits paid

---

**13.** A similar qualification was added at the end of the damages charge.

and payable. *See* 33 U.S.C. § 933(e) (1976). To protect this right of recoupment, the employer is given a lien on the judgment proceeds, *Travelers Insurance Co. v. Haden*, D.C.App., 418 A.2d 1078, 1082 (1980); *Potomac Electric Power Co. v. Wynn, supra* at 16, 343 F.2d at 298, and may itself sue the third party if the employee has not commenced proceedings within six months after a compensation award. *See* 33 U.S.C. § 933(b), (d), (e) (1976). *See also Federal Marine Terminals, Inc. v. Burnside Shipping Co., supra* (employer may sue either as subrogee of employee or in its own right, by a direct action in tort).

 Where the employer who has paid benefits is totally blameless for the accident in question, the LHWCA's requirement that the employer be fully reimbursed for its compensation causes no conceptual problem whatsoever, for it is not the purpose of the LHWCA to provide the injured employee with a double recovery. *See Bloomer v. Liberty Mutual Insurance Co.*, 445 U.S. 74, 81, 100 S.Ct. 925, 929, 63 L.Ed.2d 215 (1980), citing S.Rep.No.428, 86th Cong., 1st Sess. 2 (1959); *The Etna*, 138 F.2d 37, 40 (3d Cir. 1943); 33 U.S.C. § 933(f) (1976). *See also* 2A. A. Larson, The Law of Workmen's Compensation § 71.20 (1976). In this situation, the injured employee should be made whole at the expense of the actual wrongdoer—the third party—and the faultless employer ought justly to come out even. But where the employer is not itself faultless, but is, for example, concurrently negligent with the third party, a problem is posed. In this situation, some courts have felt it unjust to place the employee's full loss on the negligent third party while allowing the perhaps equally negligent employer to escape liability altogether by recouping its benefits. In the instant case, for example, Tompkins was immune from suit on account of Coleman's injury and is entitled by the LHWCA to recoup the full $17,000 in benefits which it has paid to Coleman, notwithstanding the trial court's finding (the correctness of which we will assume) that Tompkins was itself negligent. *See Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); *Shell-*

*man v. U. S. Lines, Inc.*, 528 F.2d 675 (9th Cir. 1975), *cert. denied*, 425 U.S. 936, 96 S.Ct. 1668, 48 L.Ed.2d 177 (1976); *Dodge v. Mitsui Shintaku Ginko K. K. Tokyo*, 528 F.2d 669 (9th Cir. 1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976); *Landon v. Lief Hoegh & Co.*, 521 F.2d 756 (2d Cir. 1975), *cert. denied*, 423 U.S. 1053, 96 S.Ct. 783, 46 L.Ed.2d 642 (1976). Ceco, on the other hand, as the sole party defendant, presently stands liable for $150,000—the full amount of Coleman's litigated damages as found by the jury.

 Ordinarily, joint tortfeasors such as Ceco and Tompkins have rights of contribution from each other. *See Yellow Cab Co. of D. C. v. Dreslin*, 86 U.S.App.D.C. 327, 328, 181 F.2d 626, 627 (1950); *George's Radio, Inc. v. Capital Transit Co.*, 75 U.S.App. D.C. 187, 189, 126 F.2d 219, 221 (1942). But in *Murray v. United States, supra*, the Circuit Court stated, in a case arising under the Federal Employees Compensation Act (FECA), 5 U.S.C. §§ 8101–93 (1976), that contribution is not available as means of equitably distributing damages liability between a third party tortfeasor and a negligent employer. *Id.* at 94, 405 F.2d at 1364. *Accord, Pope & Talbot, Inc. v. Hawn, supra; Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp.*, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952) (but both cases dealt with cases brought under the LHWCA's maritime jurisdiction, which has its own body of law peculiar to the maritime). The *Murray* court reasoned that the employer could not be said to be "jointly liable" to the employee for damages—and so liable for contribution—in light of the provision in the FECA (nearly identical to a corresponding provision of the LHWCA) that the employer's liability for statutory benefits shall be exclusive and in place of all liability of the employer to the employee. *See* 5 U.S.C. § 8116(c) (1976); 33 U.S.C. § 905(a) (1976). Accordingly, the court upheld the dismissal of the third party tortfeasor's third-party complaint against the United States government (there, the employer). But the court rather abruptly concluded this part of its opinion with the following curious paragraph:

Any inequity residing in the denial of contribution against the employer is mitigated if not eliminated by our rule in *Martello v. Hawley*, 112 U.S.App.D.C. 129, 300 F.2d 721 (1962). *Martello* holds that where one joint tortfeasor causing injury compromises the claim, the other tortfeasor, though unable to obtain contribution because the settling tortfeasor had "bought his peace," is nonetheless protected by having his tort judgment reduced by one-half, on the theory that one-half of the claim was sold by the victim when he executed the settlement. *In our situation if the [third party tortfeasor] is held liable the damages payable should be limited to one-half of the amount of damages sustained by plaintiff, assuming the facts would have entitled the [third party] to contribution from the employer if the statute had not interposed a bar.* A tortfeasor jointly responsible with an employer is not compelled to pay the total common law damages. The common law recovery of the injured employee is thus reduced in consequence of the employee's compensation act, but that act gave him assurance of compensation even in the absence of fault. [*Murray v. United States, supra* at 95–96, 405 F.2d at 1365–66 (footnote omitted) (emphasis added).]

Thus was the so-called *Murray* credit born.

In denying Ceco a credit of one-half the amount of the verdict, the trial court held here, as an initial matter—as, indeed, it had to—that the *Murray* credit was non-binding dictum. We agree. The narrow question before the *Murray* court was whether the exclusive liability provision of the FECA barred a claim for contribution by the third party against the employer. In other words, the issue was whether the employer could be impleaded in the employee's suit against the third party. The *Murray* court's narrow answer was that suit against the employer was barred. The court's attempt to justify this *result* by announcing, in advance of a jury finding on whether there is liability on the part of the third party, that any future plaintiff's verdict might be reduced by one-half, was palpable dictum.[14] *See* 2A A. Larson, *supra*, § 76.22 at 14–314 through 14–315; there in § 76 one will find a learned exposition by Professor Larson on this complex question with all its ramifications.

The question of the authoritativeness of the *Murray* credit has been directly broached in three prior decisions in this jurisdiction. In *Dawson v. Contractors Transport Corp.*, 151 U.S.App.D.C. 401, 467 F.2d 727 (1972), an injured construction worker, having been compensated under the LHWCA by his employer, a subcontractor, sued the project's general contractor and another subcontractor for negligence. After the plaintiff's employer was impleaded by the general contractor on a contractual indemnity theory, the third party subcontractor filed a class-claim against the employer for a *Murray* credit. The question presented on appeal was whether the issue of the employer's negligence—and thus, the third party's entitlement to a *Murray* credit—was triable by the court or the jury. In holding that the issue was triable by the trial judge sitting in equity, the *Dawson* court did assume that the *Murray* credit applied to the LHWCA and that a panel of the circuit court was powerless to overturn it. *Id.* at 403–04 n.3, 467 F.2d at 729–30 n.3. But we are not bound by the latter characterization in light of the date of the *Dawson* decision, *see M. A. P. v. Ryan*, D.C.App., 285 A.2d 310, 312 (1971), and find more persuasive the reasoning of the earlier District Court cases of *Turner v. Excavation Construction Inc.*, 324 F.Supp. 704 (D.D.C.1971), and *Anthony v. Norfleet*, 330 F.Supp. 1211 (D.D.C.1971).

In *Turner*, Judge Gesell called the *Murray* credit "dictum," *supra* at 705, and declined to apply it in a LHWCA, rather than FECA, context because of the credit's "anomalous result[s]." *Id.* Chief among

14. The party with the greatest interest in this issue—the plaintiff employee—was not even a party to the appeal in *Murray*.

these was Judge Gesell's perception—which he suggested the *Murray* panel had not shared—that the employer would, regardless of its negligence, be entitled to recoup its benefit payments from the verdict which *Murray* decreed ought, in "equity," to be halved beforehand. *Id.*[15] Judge Gesell found "incongruous" an equitable remedy which deprived the injured employee of half his verdict on account of his employer's negligence, as well as a further amount required to reimburse the employer. *Id.* Judge Gasch, in *Anthony v. Norfleet, supra,* agreed with Judge Gesell's opinion that the *Murray* credit was dictum, 330 F.Supp. at 1214, and similarly declined to extend *Murray* to a case arising under title IV of the District of Columbia Code (pertaining to third-party negligence actions by injured police and firefighters).

■ It is our opinion that the *Murray* credit is *obiter dictum* and thus, of no precedential effect. We are accordingly not bound to apply it, *see M. A. P. v. Ryan, supra* at 312. Consequently, we should adopt the *Murray* credit as the rule in this jurisdiction only if persuaded of its merits. We decline to do so.

As an initial matter, the *Murray* court's rationale for its unique credit seems to us analytically unsound. The court derived its concept of a *pro rata* credit from *Martello v. Hawley,* 112 U.S.App.D.C. 129, 300 F.2d 721 (1962), a case holding that a verdict against one of the two joint tortfeasors must be reduced by half when the plaintiff has earlier settled his claim against the other joint tortfeasor. To be sure, there is some similarity between the two situations: both the settling tortfeasor and the employer who has paid workmen's compensation benefits are immune from a claim for contribution by reason of their respective payments to the plaintiff. *Martello v. Hawley, supra; Murray v. United States, supra.* But, as Professor Larson has observed, there is a crucial difference. The primary

rationale for reducing the plaintiff's recovery in *Martello* was to prevent collusive and fraudulent settlements between the plaintiff and one tortfeasor at the expense of the other. *See Martello v. Hawley, supra* at 131, 300 F.2d at 723. As Professor Larson observes, this rationale has little, if any, applicability in the workmen's compensation context, for "[t]he employee has no choice whether his injury should be under the compensation act, and his employer's liability under that act is fixed by law." 2A A. Larson, *supra,* § 76.22 at 14–318. *Accord, Lucas v. "Brinknes" Schiffahrts Ges. Franz Lange G. M. B. H. & Co., K. G.,* 379 F.Supp. 759, 764 (E.D.Pa.1974) (three judge court). The danger of collusion central to *Martello* is absent from the situation addressed here and by *Murray.* Moreover, the ostensibly equitable results of *Martello* and *Murray* do not coincide; the *Martello* plaintiff is left with one-half his verdict *plus* the amount of his settlement (*i.e.,* the amount for which he "sold" the other half of his claim), while the *Murray* plaintiff is left, in the end, with only one-half his verdict; he must reimburse his employer for benefits paid. 2A A. Larson, *supra,* § 76.22 at 14–318. Judge Gesell considered this result "incongruous." *Turner v. Excavation Construction, Inc., supra* at 705.

Here, Coleman was found by the jury to have suffered $150,000 in damages; yet if *Murray* is applied, Coleman will, in the end, effectively have received only $75,000 from all sources. Ceco will have to pay $58,000 cash to Coleman and, in addition, reimburse Tompkins for the $17,000 in benefits which Coleman has already received. This result would relieve Ceco of the supposed inequity produced by the LHWCA's insulation of Tompkins from a claim for contribution— for Ceco would pay, in the end, precisely what it would if contribution were available. Moreover, Tompkins, for its part, would remain unaffected by application of the credit, for it would, in this case, obtain full reimbursement for its compensation

---

**15.** Interestingly, the Circuit Court, in *Dawson, supra,* noted Judge Gesell's substantive criticism of *Murray,* stating only that the question of *Murray's* validity had not been there raised before it. *Dawson v. Contractors Transport Corp., supra* at 403–04 n.3, 467 F.2d at 729–30 n.3.

outlay (as the LHWCA requires).[16] It is thus plain that the inequity to Ceco would merely have been shifted to Coleman, who would be forced to absorb a loss of $75,000 —a loss attributable, not to his own negligence, but to that of his immunized employer, Tompkins. We see little equity in that result.

The terse comment interjected without forewarning or advance discussion in the opinion by the Circuit Court for this jurisdiction in *Murray, supra*—later to be referred to as the *Murray* credit—nevertheless was treated as a new doctrine and has evoked considerable discussion in the Circuit Courts throughout the country, as well as in the state courts, even though the point was not in issue in *Murray*. After exploring the *Murray* credit from all sides, for the most part it has been widely rejected because it did not perceive the problems it was creating.

As Judge Gesell observed in *Turner, supra* : The Court must be "[m]indful of the Supreme Court's admonition in the Longshoremen's Act case of *Halcyon Lines v. Haenn Ship Ceiling and Refitting Corp.*, 342 U.S. 282, 285, 72 S.Ct. 277, 279, 96 L.Ed. 318 . . . (1951), against attempting to fashion new judicial rules of contribution." (324 F.Supp. at 705). To demonstrate the unac-

ceptable result of an application of the *Murray* credit, the trial judge in this case incisively posed this hypothetical:

Suppose the jury verdict herein was the same ($150,000) but that [the plaintiff employee] had previously been awarded $75,000 from Tompkins in workmen's compensation benefits. . . . Ceco would be awarded a credit of $75,000 and *all* of that sum would have to be reimbursed to Tompkins under Section 33 of the Longshoremen's Act. Nothing would be left for the plaintiff and his total gross recovery would be the $75,000 in benefits he had already received from *Tompkins.* That is the . . . unfair result to the plaintiff as derives from applying *Murray*, . . . plaintiff has gained nothing from his law suit except to accomplish reimbursement to Tompkins for all his trouble and expense." [Memorandum Opinion at 7–8].

The *Murray* credit, observed the trial judge in this case, "merely shifts the inequity from the defendant sued to the plaintiff-employee." (Memorandum Opinion at 9).

Several of the Circuit Courts have declined to adopt the *Murray* credit for essentially the same reasons. See *Zapico-Bucyrus-Erie Co.*, 579 F.2d 714 (2d Cir. 1978); *Samuels v. Empresa Lineas Maritimas Argentinas*, 573 F.2d 884 (5th Cir. 1978); [17]

---

**16.** It is not hard to imagine a case, however, in which application of the *Murray* credit would compromise the employer's compensation lien. For example, in the instant case, if the jury had awarded Coleman only $30,000, application of the credit (reducing the judgment to $15,000) would have left Tompkins $2,000 short of securing full reimbursement for its compensation outlay—with Coleman, by the way, receiving nothing from Ceco. While it might be agreed that there is little injustice in not fully reimbursing an employer who is negligent, this situation points up a major problem with the *Murray* credit: the employer who has been adjudged negligent and deprived of a portion of its compensation lien as a result has not had its day in court. It is thus that one pair of commentators has suggested that if *Murray* is to be the rule, some procedural mechanism must be used to implead, join, or otherwise bring the employer before the court. Cohen & Dougherty, *The 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act: An Opportunity for Equitable Uniformity in Tripartite Industrial Accident Litigation,* 19

N.Y.L.F. 587, 597–98 (1974). But as Judge Gasch observed in *McKenney v. Capitol Crane Corp.*, 321 F.Supp. 880 (D.D.C.1971), the exclusive liability provision of the LHWCA (33 U.S.C. § 905 (1976)) would seem to protect an employer from even the expenses of appearing in an action against the third party. *Id.* at 882 n.2. *Cf. Bloomer v. Liberty Mutual Insurance Co.*, 445 U.S. 74, 100 S.Ct. 925, 63 L.Ed.2d 215 (1980) (employer's right of recoupment is so absolute that it may not even be required to contribute to the legal fees of an employee who himself recovers from the third party). Note that *Dawson v. Contractors Transport Corp., supra*, is distinguishable; there, the employer was brought before the court on an independent contractual claim for indemnity, not on the basis of the *Murray* credit claim later lodged by a co-defendant. *See Smither & Co. v. Coles*, 100 U.S.App.D.C. 68, 70 n.18, 242 F.2d 220, 224 n.18, *cert. denied,* 354 U.S. 914, 77 S.Ct. 1299, 1 L.Ed.2d 1129 (1957).

**17.** In *Samuels,* the court stated:

*Dodge v. Mitsui Shintaku Ginko K. K. Tokyo, supra; Shellman v. United States Lines, Inc., supra; Santino v. Liberian Distance Transports, Inc.,* 405 F.Supp. 34 (W.D. Wash.1975); *Hubbard v. Great Pacific Shipping Co., Monrovia,* 404 F.Supp. 1242 (D.Ore.1975); *Solsvik v. Maremar Compania Naviera, S. A.,* 399 F.Supp. 712 (W.D. Wash.1975); *Lucas v. "Brinknes" Schiffahrts Ges. Franz Lange G. M. B. H. & Co., K. G., supra. See also* 2A A. Larson, *supra,* § 76.22 at 14–314 through 14–319.

The Supreme Court recently rejected a proportionate fault rule similar in theory to the *Murray* credit in *Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521, *reh. denied,* 444 U.S. 889, 100 S.Ct. 194, 62 L.Ed.2d 126 (1979), a case arising under the LHWCA's maritime jurisdiction. The rule at issue— espoused by the en banc Fourth Circuit, *see* 577 F.2d 1153 (1978)—had given a third party shipowner a credit of 70 per cent of the verdict on the basis of a jury finding that the immunized stevedore-employer was 70 per cent at fault in causing the plaintiff-longshoreman's injury. In rejecting this "equitable credit," the Court stated that "[i]t may remove some inequities, but it creates others and appears to shift some burdens to the longshoreman." 443 U.S. at 268, 99 S.Ct. at 2760. The Court held that the third-party shipowner should be given no credit whatsoever, and explained:

> Under this arrangement, it is true that the ship will be liable for all of the damages found by the judge or jury; yet its negligence may have been only a minor cause of the injury. The stevedore-employer may have been predominantly responsible; yet its liability is limited to the

> To permit the employer's negligence to reduce the joint tortfeasor vessel's liability would reduce the award of plaintiff, the one person who is blameless. [*Id.* at 889.]

18. In note 24, the Supreme Court referred to *Zapico v. Bucyrus-Erie Co.,* where the Second Circuit wondered "why the longshoreman injured by the negligence of a third party should recover less when his employer has also been negligent than when the employer has been without fault." 579 F.2d at 725.

Act, and if it has lien rights on the longshoreman's recovery it may be out-of-pocket even less.

Under the Court of Appeals' proportionate-fault rule, however, there will be many circumstances where the longshoreman will not be able to recover in any way the full amount of damages determined in this suit against the vessel. If, for example, his damages are at least twice the benefits paid or payable under the Act and the ship is less than 50% at fault, the total statutory benefits plus the reduced recovery from the ship will not equal his total damages. More generally, it would appear that if the stevedore's proportionate fault is more than the proportion of compensation to actual damages, the longshoreman will always fall short of recovering the amount that the factfinder has determined is necessary to remedy his total injury, even though the diminution is due not to his fault, but to that of his employer.[18]

\* \* \* \* \* \*

Some inequity appears inevitable in the present statutory scheme, but we find nothing to indicate and should not presume that Congress intended to place the burden of the inequity of the longshoreman whom the Act seeks to protect.... [*Id.* at 270, 99 S.Ct. at 2761.]

While in *Edmonds* the court stated that its decision "does not necessarily" affect cases, such as *Dawson, supra,* which are under the non-maritime jurisdiction of the LHWCA, *see* 443 U.S. at 272 n.31, 99 S.Ct. at 2762 n.31,[19] we find *Edmonds'* reasoning compelling. Accordingly, we agree with the trial court's rejection of the *Murray*

19. *But see Edmonds v. Compagnie Generale Transatlantique, supra,* 443 U.S. at 273, 99 S.Ct. at 2763, where the Court speculated that "Congress might have intended to adopt the existing maritime [no credit] rule even for third-party actions under the Act that are not within the admiralty jurisdiction, though we need not and do not reach that issue today." *See also McCormack v. Noble Drilling Corp.,* 608 F.2d 169, 175 (5th Cir. 1979) (implying that the *Murray* credit is no longer viable after *Edmonds*).

credit and hold that Ceco was entitled to no credit on account of Tompkins' concurrent negligence. The Supreme Court counseled wisely when it said that efforts to remedy the perceived inequities in tripartite litigation under the LHWCA are better left to the legislature. *See Edmonds v. Compagnie Generale Transatlantique, supra*, 443 U.S. at 271–73, 99 S.Ct. at 2762–63.

*Affirmed.*