## NAUTILUS INSURANCE COMPANY Plaintiff,

v.

## DOLPHIN POOLS CORPORATION, et al., Defendants.

### Civ. A. No. 89–3394.

United States District Court, District of Columbia.

July 5, 1990.

---

3. The remaining count is base on a claim for $15,700.00.

James W. Hooper, Richmond, Va., for Nautilus Ins. Co.

Michael Nussbaum, Michael Waitzkin, Lori E. Fox, Washington, D.C., for Lawrence and Tina Spergel.

Edwin A. Sheridan, Fairfax, Va., John J. Dillon, Rockville, Md., for Econo Lodges.

Ronald G. Guziak, Washington, D.C., for 1600 New York Ave., Winberg Management, Winberg Development Co.

D'Ana E. Johnson, Washington, D.C., for Dolphin Pools in *Spergel* case only.

Henry W. Counts, Alexandria, Va., for Dolphin Pools.

Perry J. Becker, Bowie, Md., for Rosalie Casebeer.

Robert L. Ellis, Fairfax, Va., for Embassy Row Hotel.

## MEMORANDUM OF OPINION AND ORDER

REVERCOMB, District Judge.

This is an action for declaratory relief as to plaintiff Nautilus Insurance Company's ("Nautilus") obligations to its insured, Dolphin Pools Corporation ("Dolphin Pools"), in *Spergel v. Econo Lodges of America, Inc., et al.,* a survival action involving the drowning death of Mitchell Spergel at the Econo Lodge swimming pool. The *Spergel* plaintiffs originally sued the motel, its owners and Dolphin Pools, the company that provided both the maintenance and lifeguard services. The motel defendants settled the case before trial and plaintiffs proceeded only against Dolphin Pools. After nearly two days of deliberations, the jury found in favor of the plaintiffs and awarded them $679,478.[1]

■ In its declaratory action, Nautilus contends that Mitchell Spergel's drowning was due to lifeguard negligence (versus negligent pool maintenance),[2] that the lifeguard was negligent in his failure to close the pool despite its extraordinarily murky water. Nautilus argues that this negligence acted as a "superseding, intervening" cause which relieves Dolphin Pools of its liability for the murky water.[3] Having heard all of the evidence at the *Spergel* trial and having considered the factual record offered by the litigants in their cross-motions for summary judgment filed earlier, the Court now finds that plaintiff Nautilus has a duty to indemnify Dolphin Pools for the *Spergel* jury verdict.

■ Excusing a negligent actor from liability because of the subsequent negligence of another is permissible only in limited circumstances.

> If the danger of an intervening negligent or criminal act *should have been reasonably anticipated* and protected against, the defendant will be held responsible for the damages which result despite the entry of another act in the chain of causation. If, however, the intervening act

---

**1.** This award has been reduced by the Court to credit Dolphin Pools with co-defendants' pretrial settlement.

**2.** By Memorandum of Opinion and Order dated February 16, 1990, the Court determined that the Nautilus policy covered Dolphin Pools' liability due to negligent pool maintenance, but not to lifeguard negligence. 731 F.Supp. 1.

**3.** Nautilus also raises issues already addressed by the Court in its July 5, 1990 Memorandum of Opinion and Order in *Spergel,* civil action number 89–0480, 741 F.Supp. 8 (hereafter referred to as *"Opinion and Order"*). Contrary to Nautilus' assertions, lifeguard negligence was *not* the basis of the jury verdict in *Spergel (Opinion and Order,* p. 10, 11–12). The evidence at the *Spergel* trial fully supported a jury finding that the water was cloudy rather than clear (*Opinion and Order,* pp. 10–11), that Dolphin Pools knew of the water clarity problem (*Opinion and Order,* p. 10), and that the murky water proximately caused Mitchell Spergel's death (*Opinion and Order,* pp. 10–11). Nautilus' request to interview or depose jurors is DENIED.

can fairly be said to be that *which could not have been reasonably anticipated,* plaintiff may not look beyond the intervening act for his recovery. *St. Paul F. & M. Ins. Co. v. James G. Davis Const. Crop,* 350 A.2d 751, 752 (D.C.1976). It is only when the intervening negligence is "extraordinary" that it will actually break the causation chain. See *Restatement (Second) of Torts,* §§ 443, 447.

Although plaintiff submitted affidavits in which experts opined that a lifeguard should close a pool when the water is so murky that the drain can not be seen, it still is foreseeable, and not highly extraordinary, that a lifeguard would fail to close a pool under such circumstances. See e.g., *Fisher v. Bell Helicopter Co.,* 403 F.Supp. 1165, 1173–74 (D.D.C.1975) (District of Columbia's failure to correct a defective helicopter part did not relieve the manufacturer of liability); *CECO Corp. v. Coleman,* 441 A.2d 940, 944–45 (D.C.1982) (company's failure to clear a debris pile did not excuse subcontractor for creating hazard that lead plaintiff to trip over the debris); *Mehlman v. Powell,* 378 A.2d 1121, 1124–25, 281 Md. 269 (1977) (physician's failure to correct another physician's interpretation of a patient's electrocardiogram was a concurrent, not superseding, cause of the patient's death); *Restatement (Second) of Torts,* § 452 (a third party's failure to prevent harm threatened by the actor's negligence is generally not a superseding cause of such harm). A negligent actor cannot rely on others to exercise greater care than its own and thus save it from the foreseeable consequences of that negligence.

Certainly, the lifeguard's failure to close the pool was foreseeable under the specific circumstances of the instant case. See *Restatement (Second) of Torts,* § 447(a), (b). The pool had experienced water clarity problems for several months prior to the accident, but had often remained open, sometimes without a lifeguard. The lifeguard at the time of accident, Antonio Williams, had been certified for less than two weeks and did not have a pool operator's permit as required by the District of Columbia. None of Dolphin Pools' management had interviewed Mr. Williams prior to his hiring. Nor did anyone check his lifesaving skills, give him any on-site training, or even observe him at work. As Mr. Williams testified in his deposition, he simply received his Red Cross certification card, called Dolphin Pools and was assigned to a pool the very next day. Under the circumstances, the Court can not conclude that the lifeguard's failure to close the pool was something which could not have been reasonably anticipated and therefore it was not an efficient intervening cause relieving Nautilus of its duty to indemnify its insured. At most, it was a concurring cause.[4]

---

**4.** For a full discussion of the principles of negligence and proximate causation applied to the *Spergel* case, see this Court's separate Memorandum of Opinion and Order, dated July 5, 1990, denying Dolphin Pools' motion for judgment notwithstanding the verdict or, alternatively, for new trial in *Spergel.*