**Lawrence SPERGEL and Tina Spergel, et al., Plaintiffs,**

**v.**

**DOLPHIN POOLS CORPORATION, et al., Defendants.**

**Civ. A. No. 89–0480.**

United States District Court, District of Columbia.

July 5, 1990.

D'Ana E. Johnson, Donald C. Allen, Anne Marie McGinley, Allen, Johnson, Alexander & Karp, Washington, D.C., for defendant Dolphin Pools.

Michael B. Waitzkin, Lori E. Fox, Nussbaum & Wald, Washington, D.C., for plaintiffs.

## MEMORANDUM OF OPINION AND ORDER

REVERCOMB, District Judge.

This action involves the June 1988 drowning death of Mitchell Spergel, a thirteen year old boy, at the Econo Lodge motel swimming pool. Plaintiffs initially sued the motel and its owners[1] and the company that provided both the lifeguard and the pool maintenance services, Dolphin Pools. The motel defendants settled the case before trial.

Plaintiffs' theory at trial was that the pool's extraordinary murky water prevented the lifeguard, and other swimmers, from saving the young boy whom they could not see drowning or lying at the bottom of the pool. At no time did plaintiffs argue that the lifeguard acted negligently in his lifeguarding duties. The jury was instructed as to the law of negligence, proximate cause, concurrent causation, contributory negligence and assumption of the risk. After nearly two days of deliberation, the jury found in favor of plaintiffs and awarded them $679,478 in damages. At bar is defendant Dolphin Pools' motion for judgment notwithstanding the verdict or alternatively for new trial and its motion to amend judgment to include credit of the motel defendants' settlement.

I. *Defendant's Motion for Judgment Notwithstanding the Verdict or, Alternatively, for New Trial.*

Because a motion for judgment n.o.v. intrudes upon the jury's domain, the question presented by defendant's motion is very narrow. The jury's verdict *must* stand unless "the evidence, together with all inferences that can reasonably be drawn therefrom is so one-sided that reasonable men could not disagree on the verdict." *Carter v. Duncan–Huggins, Ltd.,* 727 F.2d 1225, 1227 (D.C.Cir.1984). Defendant's motion must be denied unless

> "there can be *but one reasonable conclusion*" drawn from the evidence viewed "in the light most favorable to the [plaintiffs] ..., giving them the advantage of every fair and reasonable inference that the evidence may justify." *Metrocare v. Washington Metropolitan Area Transit Authority,* 679 F.2d 922, 924–25 (D.C.Cir.1982) (citations omitted) (emphasis added).

The trial court may not assess the credibility of witnesses or weigh the evidence. *Id.* at 925.

■ Defendant Dolphin Pools' motion for judgment notwithstanding the verdict is DENIED. Plaintiffs presented evidence tending to show that the pool was murky on both the morning and evening of the drowning. Reverend Miller testified that on the day before the drowning, the water was so murky that he "could not see his feet" when standing at the deep end, that the water was "like skim milk." According to Reverend Miller, the water was still murky at the time of the drowning. The witness could not see Mitchell Spergel's body lying at the bottom of the pool even after doing a surface dive to look for it; the Reverend did not see the body in the water until he was two feet away from it.[2] Apparently, no other swimmers saw the body at the bottom of the pool, even though they were "doing laps" overhead. Plaintiffs also introduced evidence showing that the pool water had been extraordinarily cloudy in the past and that the District of Columbia had previously given warning about the water clarity problems.

In light of all of the evidence, especially the testimony of Reverend Miller, the lifeguard's (Antonio Williams) testimony that the water was clear on the morning and evening of the drowning was contradicted

---

1. For purposes of this Opinion, the motel defendants are: (1) 1600 New York Avenue, the owner of the subject Econo Lodge motel (2) Winberg Management Company, Inc., 1600 New York Avenue's agent that manages the motel, (3) Winberg Development Co., an associated company, and (4) Econo Lodges of America, the franchisor of the subject motel.

2. Defendant's claim that this testimony should be discounted because the witness was not wearing goggles and that the lifeguard had a better vantage point is argument and goes to the weight of the testimony.

(either directly or by implication) *and* the entire credibility of Mr. Williams was at-issue. The water clarity issue and the weight, *if any*, to give to Mr. Williams' testimony were matters for the jury.

Plaintiffs also presented evidence that could have lead a jury to reasonably conclude that the murky water was a proximate cause of Mitchell Spergel's drowning. Dr. Johnson, a pool safety expert, testified that the District of Columbia, and virtually every other jurisdiction in the nation, requires that pool water be sufficiently clear so that the bottom of the deep end can be seen. It takes little more than four to six minutes to drown and a clear pool permits not only a lifeguard, but other swimmers and bystanders, to identify and rescue someone who may have sunk beneath the water. Plaintiffs introduced evidence that the lifeguard and motel guests were in the pool area at the approximate time of the drowning or during the period when a successful rescue could have been effected. Thus, there was evidence from which a rational trier of fact could have found that the murky water "played a substantial part in bringing about" Mitchell Spergel's death. Contrary to defendant's assertions, plaintiffs consistently advocated this theory at trial.

■ Defendant suggests that the lifeguard's failure to close the pool was not a "foreseeable" event, so that the causation chain was broken. This issue was *never* raised at trial. Moreover, plaintiffs introduced evidence, by way of both direct testimony and exhibits, that the water clarity problem had been an ongoing problem, known to several Dolphin Pools employees *and to its owner*. From this, a jury could have concluded that other Dolphin Pools employees knew of or should have known of the water clarity problem at the time of Mitchell Spergel's drowning.

■ The Court refuses to find that Mitchell Spergel was contributorily negligent as a matter of law. Defendant's argument rests on the theory that Mitchell Spergel "entered the deep end of the pool when he was instructed not to do so." The evidence at trial, however, conflicted as to whether Mitchell Spergel voluntarily entered the deep end. Defendant presented testimony that the boy often entered the pool by a ladder on the deep end and that the decedent had been seen "walking the wall" of the pool in the deep end. On the other hand, there was also testimony that the decedent was a careful, risk-adverse child, who knew not to go into the deep end and who had always held onto the rope or the wall when nearing the deep end. Based on the evidence presented at trial, there was an issue of fact as to whether Mitchell Spergel himself was negligent— whether he entered the deep end of the pool on his own accord, whether he was pushed (inadvertently or otherwise), or whether he slipped, but drifted down to the deep end.

■ The Court also DENIES defendant's motion for a new trial. Contrary to defendant's claim, this Court can not conclude that the jury was confused by plaintiffs' theory of the case and its focus on the murky water issue; nor can it conclude that substantial justice has not been done. See Wright & Miller, *Federal Practice and Procedure: Civil § 2803*, p. 32. Plaintiffs clearly and consistently argued that Dolphin Pools' negligent maintenance caused the murky water which contributed to Mitchell Spergel's death. Plaintiffs *never* argued that Mr. Williams was ill-trained as a lifeguard, that he failed to be watchful or that he had negligently removed the buoy line dividing the deep and shallow ends. Any criticism of Mr. Williams focused solely on his pool maintenance duties.

Defendant's proposed instruction [3] would not have "clarified" the issues and was

---

3. Defendant proposed the following instruction: "In this case, plaintiffs do not contend that the lifeguard, Antonio Williams, was negligent or otherwise failed to carry out his duties with reasonable care. The *sole claim* here is that the cloudy water which existed in the pool on June 22, 1988 *was the proximate cause* of Mitchell Spergel's drowning. If you find that Mitchell Spergel drowned *for any reason other than* that the water in the pool was cloudy, your verdict must be for defendant." (emphasis added).

improper. The instruction ignored plaintiffs' theories that Dolphin Pools failed in its pool *maintenance* duties and that the murky water was a *concurrent*, rather than the sole, cause of Mitchell Spergel's drowning.

## II. *Defendant's Motion to Amend Judgment to Include Credit*

This action began as both a survival and wrongful death action. According to the settlement agreement, the motel defendants purportedly paid $300,000 to settle the survival action and $50,000 to settle the wrongful death action. At trial, plaintiffs voluntarily dismissed the wrongful death count and proceeded only on the survival action. Dolphin Pools now claims that it is entitled to a credit of the settlement amount, or $350,002.[4]

■ Plaintiffs first claim that Dolphin Pools can receive credit only for the amount of settlement for the survival action, or $300,000. The Court rejects this theory. A plaintiff can recover no more than the loss actually suffered. The jury verdict represents the full measure of this loss. *Snowden v. D.C. Transit System, Inc.*, 454 F.2d 1047, 1048 (D.C.Cir.1972). To deny Dolphin Pools credit of the wrongful death settlement would effectively allow plaintiffs to recover $50,000 more than the jury verdict and would constitute unjust enrichment.

■ Plaintiffs also argue that defendant Dolphin Pools can only receive credit for 50% of the jury verdict ($339,739) on the theory that there were only two tortfeasors prior to trial—the motel and the pool management company. This claim belies the record. Plaintiffs named five defendants as joint tortfeasors, four of which settled the case and purportedly contributed to the settlement sum.[5] Even if defen-

dants Winberg Management Company and 1600 New York Avenue were considered to be one single tortfeasor, there would still be three settling defendants and Dolphin Pools would be entitled to a credit of up to ¾'s of the jury verdict (well more than the settlement amount here). Accordingly, Dolphin Pools is entitled to a credit of the full settlement amount, $350,002.

### ORDER

For the reasons set forth above, IT IS ORDERED that:

Defendant Dolphin Pools' motion for judgment notwithstanding the verdict is DENIED;

Defendant Dolphin Pools' motion for a new trial is DENIED;

Defendant Dolphin Pools' motion to amend judgment is GRANTED. The Judgment on the Verdict entered on May 31, 1990 is amended to read that the plaintiffs "have and recover of and from the defendant Dolphin Pools the sum of three hundred twenty-nine thousand, four hundred seventy-six dollars ($329,476) together with costs."

---

4. The Release and Indemnity Agreement and plaintiffs' Surreply Regarding Defendant's Motion to Amend Judgment represent that defendants Winberg Management Company, Inc. and Econo Lodges of America, Inc. each paid plaintiffs one dollar in settlement of the claims against them, thereby making the total settlement amount $350,002.

5. Even though Winberg Management Company, Inc. and Econo Lodges each settled for seemingly nominal amounts, the Court is convinced, both by the background and record of this case, that the exposure faced by these two defendants was very real and that the settlement of the claims against them was bona fide.