WASHINGTON WELFARE ASSOCIA-
TION, INC., et al., Appellants,

v.

Agnes M. POINDEXTER, Appellee.

No. 81–1424.

District of Columbia Court of Appeals.

Submitted April 18, 1984.

Decided July 23, 1984.

J. Leon Williams and Franklin A. Anderson, Washington, D.C., were on the brief for appellants.

No brief was filed and no appearance was entered for appellee.

Before BELSON and TERRY, Associate Judges, and PAIR, Associate Judge, Retired.

TERRY, Associate Judge:

Appellee sued appellants, Washington Welfare Association, Inc., a non-profit corporation doing business as Southeast Neighborhood House, and its executive director, Laplois Ashford, for breach of contract and defamation. The trial court granted appellants' motion for a directed verdict on the defamation count at the conclusion of appellee's case. The jury later returned a verdict of $42,000 against appellants on the breach of contract count. Appellants appeal from the trial court's denial of their motion for judgment notwithstanding the verdict or, in the alternative, for a new trial or remittitur. We affirm the trial court's ruling on the issue of liability but remand for a modification of the damages award.

I

In 1975 appellee was hired as an accountant by James Speight, the executive director of Southeast Neighborhood House (SENH). Her duties included the preparation of various journals, quarterly reports, budgets, and the payroll. The amount of work required was too much for one person, however, and after a few months appellee requested additional help from Vivien Cunningham, who had replaced Mr.

Speight as executive director. Soon thereafter a junior accountant was hired. Appellee testified that although the situation improved, "still there was too much work for just two people to do ...." [1]

On January 15, 1978, appellee increased the salary of Wilsonia Williams, an employee of SENH, by $10 per pay period. Appellee acknowledged at trial that she had no authority to raise anyone's pay and that it was up to the executive director to decide who should receive merit increases. She explained, however, that the reason why she implemented the increase in the case of Williams was that she had been informed by Zefferine Wheeler, Williams' supervisor, that the executive director had approved it. [2]

On February 23 appellee received a memorandum from Gloria Jackson, assistant to the director of SENH, [3] stating that she had found "no justifiable reason" for Williams' pay increase. Jackson further noted that Cunningham had told her she had not authorized the increase [4] and that Wheeler said she had not made any representations that the increase had been authorized by Cunningham. Jackson concluded the memorandum by stating that she regarded appellee's actions "as a flagrant disregard for [her] authority and an abuse of [appellee's] position as Senior Accountant" and gave appellee "the option of resigning with a 30-day notice or being terminated with cause." Jackson expressed regret at the action she was taking but maintained that she could "not continue to ignore or excuse the problems in the accounting office." She told appellee that if she did not volun-

1. Audits performed both before and during appellee's tenure at SENH concluded that the accounting department was understaffed.

2. Wheeler testified that Cunningham, the executive director, orally approved the merit increase for Williams. Wheeler was subsequently fired for insubordination and misconduct.

3. Cunningham left her position as executive director of SENH in December of 1977. Laplois Ashford was appointed executive director on

January 23, 1978. During the hiatus Jackson served as acting executive director.

4. Cunningham's testimony differed from appellee's on this point. She stated that she informed Wheeler that Williams could get the merit increase if she received an above-satisfactory rating in her evaluation. Cunningham also testified that she did not remember having a conversation with Gloria Jackson about this matter.

tarily submit her resignation to the executive director by the close of that business day, the director would "formally terminate [her] services for cause on Friday, February 24, 1978." Appellee did not submit her resignation, and the following day she received a memorandum from Laplois Ashford, the executive director, informing her that she would be terminated on March 31.

Appellee then retained counsel, who wrote to the executive director on February 27 stating that appellee intended to appeal her termination under the Personnel Policy and Procedures Manual of SENH. Counsel added, however, that the hearing on appellee's appeal would have to be postponed because appellee was scheduled for surgery at Washington Hospital Center on March 2.[5] An exchange of letters followed, but the hearing on appellee's appeal from Ashford's decision to fire her was never held.

Appellee testified that she was released from the hospital on March 11 and spent approximately the next three months at home recuperating.[6] She then started to look for a job but could not find one. She applied for and received unemployment compensation benefits for thirty-two weeks, from June 1978 to January 1979, in the amount of $160 per week. In January she secured a part-time job as an accountant which lasted six weeks.[7] She did not work again until October 1980, when she found a full-time job as an office manager and bookkeeper with a construction company.

Laplois Ashford, the executive director, testified that he had concurred in Jackson's decision to terminate appellee. Ashford also stated that the appeal process on appellee's termination was thwarted when she filed suit.

## II

Appellants contend that the trial court's instruction to the jury that appellee was a permanent employee who could be discharged only for cause was erroneous. Appellants argue that the court "should have decided ... as a matter of law, that [there] was an employment relationship of indefinite duration and therefore terminable at will and without cause." Assuming that good cause for appellee's termination was required, however, appellants maintain that the court erred in not entering a judgment in their favor, since the evidence was "clear and convincing" that SENH had good cause to fire her. Finally, appellants contend that the jury's award of damages was excessive.[8]

▮ A motion for judgment notwithstanding the verdict under Super.Ct.Civ.R. 50(b) may be granted "only when the evidence, viewed in the light most favorable to the nonmoving party, permits only one reasonable conclusion as to the proper judgment." *Lewis v. Washington Metropolitan Area Transit Authority*, 463 A.2d 666, 669 (D.C.1983) (citations omitted). Thus, "[w]hen there is 'some evidence from which jurors could find the necessary elements,' ... or when the case turns on disputed facts and witness credibility ... the case is for the jury." *District of Columbia v. Gandy*, 450 A.2d 896, 900 (D.C.1982) (citation and footnote omitted), *modified on other grounds*, 458 A.2d 414 (D.C.1983). On the present record, we hold that appel-

---

5. On February 28 appellee submitted an application for sick leave for a six-week period beginning March 1. The executive director approved the leave for only two weeks.

6. Appellee sent a memorandum to Ashford dated February 28 in which she stated that, according to the leave records, she had accumulated 103.5 hours of annual leave and 116.5 hours of sick leave.

7. Appellee worked thirty-two hours a week at $8 an hour.

8. Appellants also argue that "[d]uring both direct and cross-examination, [appellee] exhibited such emotion that the jury's verdict was overshadowed by passion, prejudice, sympathy and grossly in excess of what the evidence showed." On the record before us, this argument has no merit.

lants' motion for judgment notwithstanding the verdict was properly denied. We find error, however, in the denial of appellants' alternative motion for a remittitur or a new trial.[9] This error may or may not require a new trial on the issue of damages, depending on the outcome of the remand proceedings which we direct the trial court to conduct.

### III

Appellants attack the trial court's instruction that appellee was a permanent employee under the employment contract who could be discharged only for cause.[10] They argue that because appellee's contract was of indefinite duration, the court should have ruled as a matter of law that it was terminable at the will of either party and that no cause had to be shown. Additionally, appellants maintain that the court's "attempt to incorporate the personnel manual into a contract [was] contrary to District of Columbia law and [was] extremely prejudicial to [their] cause." The problem with these contentions, however, is that the theories underlying them are advanced for the first time on this appeal.[11]

■ Appellants never argued below that because appellee's employment contract was of indefinite duration, either party could terminate it at will, nor did they contend that the provisions embodied in the Personnel Policy and Procedures Manual were not part of appellee's employment contract. Rather, appellants maintained that appellee's unauthorized decision to award a salary increase to one of SENH's employees, coupled with the allegedly in-

competent manner in which she handled her responsibilities as senior accountant, provided good cause for her discharge. Since "[p]arties may not assert one theory at trial and another theory on appeal," *Hackes v. Hackes*, 446 A.2d 396, 398 (D.C. 1982) (citation omitted), appellants are barred from making new arguments on appeal based on the duration and terms of appellee's employment contract.

■ Appellants also challenge the court's denial of their motion for judgment n.o.v., contending that the evidence was clear and convincing that SENH had good cause for terminating appellee. The record does not support this contention. There was evidence from which the jury could have reasonably concluded, as it did, that appellee's dismissal was not for just cause and that SENH therefore breached her employment contract.

First, with regard to appellee's alleged incompetence, appellee testified that the accounting department, which consisted of herself and a junior accountant, was understaffed. This testimony was corroborated by audits of SENH performed before and during her employment there, as well as the testimony of Vivien Cunningham, SENH's former executive director. Indeed, in her last evaluation of appellee, conducted approximately three months before appellee was fired, Cunningham wrote:

> Agnes Poindexter has been an outstanding employee under a very stressfull [*sic*] situation. She has had to accept blame for many problems created by

**9.** When a party moves for a judgment notwithstanding the verdict or, in the alternative, for a new trial, the court must rule on both motions. *Spain v. McNeal*, 337 A.2d 507, 511 (D.C.1975). The trial court did so in this case.

**10.** Part VI(E)(3) of the SENH personnel manual provides in pertinent part:
> Dismissal for just cause may be for incompetence, dishonesty or misconduct. A written statement of the dismissal detailing the reasons therefor shall be given to the employee by the Executive Director. If the dismissal is for incompetence, the employee shall receive

the same amount of notice as in reduction of staff. If the dismissal is for dishonesty or misconduct, Southeast Neighborhood House reserves the right to dismiss the staff member immediately and without advance notice.

**11.** Furthermore, even though appellee's contract was of indefinite duration, it specifically provided that her employment could be terminated only for just cause. *See Littell v. Evening Star Newspaper Co.*, 73 App.D.C. 409, 410, 120 F.2d 36, 37 (1941).

her predecessors which I feel has made her a little sensitive to criticism. Ms. Poindexter could however cultivate more discipline in her dealings with abrasive personalities.

Second, with regard to the unauthorized salary increase for Wilsonia Williams, appellee explained that she had relied on Zefferine Wheeler's representations that executive director Cunningham had orally approved it. This explanation was corroborated by the testimony of both Wheeler and Cunningham. On this evidence we hold that a factual issue was presented which the jury permissibly resolved in appellee's favor.

## IV

Finally, appellants argue that the verdict was excessive. They contend that in calculating damages, the jury failed to deduct monies received by appellee from unemployment compensation benefits and a part-time job which she held for six weeks, and erroneously awarded her damages for the four months during which she was recuperating from surgery and could not work. We agree, in part, with these contentions.

Appellee testified that when she was fired on February 24, 1978, her annual salary was approximately $15,800. She spent the next three months recuperating from surgery which took place on March 2. She was unable to get a job after that and received unemployment compensation benefits for thirty-two weeks. In January 1979 she secured a part-time position for six weeks and then remained unemployed until October 1980. In concluding that appellee was entitled to $42,000 in damages, the jury evidently multiplied the thirty-two months that it took her to find another full-time job by her monthly salary at SENH before her discharge.

■ Damages in a breach of employment contract case are measured by

the compensation "that would have been due to the employee during the unex-

pired period of employment with appropriate reduction to present worth." ...
This *prima facie* entitlement, though, is subject to the defense of mitigation of damages: "If the employee has obtained a substitute job, or could obtain one by reasonable effort, he is chargeable with the income he obtains or reasonably could obtain in this fashion, but only if the employer sustains the burden of proving these facts."

*District of Columbia v. Jones*, 442 A.2d 512, 524 (D.C.1982) (citations omitted). The trial court's instructions concerning the measure of damages in this case followed this formulation. Appellants assert, however, that the court erred in failing to instruct the jury further that any damage award should be decreased by the total amount of unemployment compensation benefits which appellee received.

■ Because appellants did not object to the court's instruction on damages, we can reverse on this ground only if we conclude that a miscarriage of justice has occurred.[12] We find none. Appellants' argument is based on the premise that unemployment compensation benefits should have been regarded as a factor in mitigating damages. We hold, however, like most of the courts that have considered this issue, that such benefits do not serve to mitigate damages. *Billetter v. Posell*, 94 Cal.App.2d 858, 860, 211 P.2d 621, 623 (1949); *Schwarze v. Solo Cup Co.*, 112 Ill.App.3d 632, 639–641, 68 Ill.Dec. 228, 232–33, 445 N.E.2d 872, 877–878 (1983); *Bang v. International Sisal Co.*, 212 Minn. 135, 141, 4 N.W.2d 113, 116 (1942); *Burens v. Wolfe Wear-U-Well Corp.*, 236 Mo.App. 892, 899, 158 S.W.2d 175, 179 (1942); *Sporn v. Celebrity, Inc.*, 129 N.J.Super. 449, 324 A.2d 71 (1974); *Century Papers, Inc. v. Perrino*, 551 S.W.2d 507, 510–511 (Tex.Civ.App.1977); *Lambert v. Equinox House, Inc.*, 126 Vt. 229, 232, 227 A.2d 403, 405 (1967); *see NLRB v. Gullett Gin Co.*, 340 U.S. 361, 71 S.Ct. 337, 95 L.Ed. 337 (1951); *Pennington v. Whiting Tubular Products, Inc.*, 370

---

**12.** *Weisman v. Middleton*, 390 A.2d 996, 1000 (D.C.1978); *see* Super.Ct.Civ.R. 51.

Mich. 590, 600, 122 N.W.2d 692, 697 (1963). *But see Meyers v. Director of the Division of Employment Security*, 341 Mass. 79, 81–82, 167 N.E.2d 160, 162–163 (1960); *Dehnart v. Waukesha Brewing Co.*, 21 Wis.2d 583, 592–597, 124 N.W.2d 664, 669–671 (1963). Consequently, appellants' attack on the court's instructions does not even get to first base.[13]

■ Appellants also contend that the court should have reduced the verdict by $6,656, which appellee received as paid sick leave and disability benefits during the four and one-half months she spent recuperating from her operation, coupled with the earnings from her temporary accounting job. While we agree with the substance of appellants' argument, we disagree with their figures.

Appellee entered the hospital on or about March 2 and was discharged on March 11. The record indicates that she was paid for 116.5 hours of sick leave and 103.5 hours of annual leave. Thus, approximately six weeks after appellee was terminated, she used up all of her leave. This would have happened anyhow because, coincidentally, her operation was scheduled to take place only a few days after she was fired. After all her leave expired, appellee would have been entitled to receive disability insurance payments for the remaining six weeks while she recuperated.[14] The jury, however, awarded her the full amount of her monthly salary for the three months following her termination. This was error. The verdict should have been reduced by $1,973, the amount of her salary during the time she used up all of her leave, for which she was paid.[15] Furthermore, the verdict should have been reduced by the difference between the total amount she would have received under disability insurance and the salary awarded to her for the six-week period following the expiration of her leave. The trial court will have to hold a new trial to determine this amount, unless the parties can agree on it. Finally, the income appellee earned from her temporary accounting job, $1,536, should also have been deducted. *Cf. Rabago-Alvarez v. Dart Industries, Inc.*, 55 Cal.App.3d 91, 127 Cal.Rptr. 222 (1976).

Upon remand, therefore, the trial court should first reduce the award of damages by $3,509. This figure represents the sum of $1,973 (salary awarded by the jury to appellee for the first six weeks of recuperation when she had already been fully com-

---

13. In concluding that unemployment compensation benefits do not mitigate damages resulting from the breach of an employment contract, we agree with and adopt the rationale of the New Jersey court in *Sporn v. Celebrity, Inc., supra*. Unemployment benefits are aimed at relieving the distress caused by unemployment. They are not wages, nor can they be deemed the equivalent of wages, even though they are paid out of funds provided by employers. *See, e.g., Lambert v. Equinox House, Inc., supra*, 126 Vt. at 232, 227 A.2d at 405. *See generally NLRB v. Gullett Gin Co., supra*, 340 U.S. at 364, 71 S.Ct. at 339. Although employers in the District of Columbia contribute to the unemployment compensation fund, they do not do so out of the goodness of their hearts. Their contributions are required by D.C.Code § 46–103 (1981) and are in the nature of a tax. The source of the benefits paid to the employee is the government, not the employer. "If the concern is to prevent a windfall to the employee, then the remedy would appear to lie in legislative action to provide a system of subrogation or reimbursement of the appropriate government agency." *Sporn*

*v. Celebrity, Inc., supra*, 129 N.J.Super. at 760, 324 A.2d at 77 (citation omitted).

14. Part IV(H) of the personnel manual provides in pertinent part:

It is the policy of SENH that employees who are physically unable to perform the functions required by their respective jobs may request disability leave, but not until they have used all their sick and annual leave. In such cases, if a grant permits employees placed on disability status will be eligible to return to their positions at SENH for a period not to exceed two months. SENH will not have any continuing employment obligation after the employee has been on disability leave for two months. However an employee may have first opportunity to apply for a position for which he is qualified. (Dependent upon a previous satisfactory evaluation.)

15. Even though Mr. Ashford approved appellee's leave application for only two weeks, the record indicates that she was paid for the full six weeks.

pensated through the payment of her leave) and $1,536 (salary earned from her temporary employment). In addition, the court should deduct the difference between appellee's salary for the last six weeks of her recuperation, *i.e.*, $1,973, and the amount of disability insurance benefits she would have received during this period. If appellee does not accept this three-part remittitur, or if the parties cannot agree on the amount of disability benefits by which the award of damages is to be reduced, then the court must hold a new jury trial on the issue of damages. *See generally Boyle v. Bond,* 88 U.S.App.D.C. 178, 187 F.2d 362 (1951).

The judgment is affirmed insofar as it imposes liability on appellants. With respect to the amount of damages, the judgment is reversed, and the case is remanded for further proceedings, to be followed by the entry of a new judgment.

*Affirmed in part, reversed and remanded in part.*