Donald SANDERS, Appellant/Cross–
Appellee,

v.

Stephen C. WRIGHT, Appellee/Cross–
Appellant.

Nos. 92–CV–307, 92–CV–440.

District of Columbia Court of Appeals.

Argued Feb. 9, 1994.

Decided June 9, 1994.

Patrick M. Regan, with whom Marc Fiedler and Victor E. Long, Washington, DC, were on brief, for appellant/cross-appellee.

Paul H. Ethridge, Rockville, MD, for appellee/cross-appellant.

Before FERREN, Acting Chief Judge,[*] and SCHWELB and KING, Associate Judges.

KING, Associate Judge:

Appellant, plaintiff in the trial court, appeals the reduction of the damages awarded to him by a jury in this negligence action. Appellee Wright cross-appeals the denial of his motion for judgment notwithstanding the verdict. Since we conclude that the trial court erred in denying appellee's motion for judgment notwithstanding the verdict we do not reach appellant's claim with respect to the damages award.

## I.

During the late evening on February 11, 1988, Wright was driving his automobile southbound on Interstate 295 in Southeast Washington. Appellant was a passenger in a vehicle driven by Geraldine Mitchell, which was travelling in the same direction at some unspecified distance behind Wright's vehicle. The weather conditions were described as bad: it had been raining on and off "heavy at times, light at times," the temperature was thirty-five to forty degrees, the visibility was fair, the road was wet, and the heavy traffic was travelling below the posted speed limit. Near the South Capitol Street exit, Wright, observing the brake lights activate on the vehicle travelling in front of him, applied his own brakes causing his vehicle to begin spinning out-of-control. Mitchell's vehicle then collided with Wright's vehicle, pushing it fifteen to thirty feet. Both cars came to rest on the right shoulder of the road one-behind-the-other. Wright's vehicle was in front, and both vehicles were pointed in the same direction they had been travelling before the collision.[1]

After appellant and Mitchell determined that neither had sustained injuries as a result of the accident, Mitchell exited her vehicle to determine the condition of the driver of the vehicle with which she had collided. She found Wright slumped over his steering wheel, having suffered head injuries. Mitchell walked back to her car and activated her emergency flashers. As she did so, an off-duty police officer, who was not in uniform, stopped to inquire about the accident. After remaining for a moment or two, the officer departed, stating that she would call for police and rescue assistance. That officer never returned to the accident scene; however, emergency personnel arrived approximately ten minutes later.

Meanwhile, appellant had exited the Mitchell vehicle and was standing on the shoulder of the road between the passenger door of that vehicle and the guardrail. During the next few moments, the traffic on the roadway passed by the accident scene without incident. Approximately five to ten minutes after the initial collision, however, a vehicle driven by James Jones,[2] with the engine roaring,[3] sped off the access ramp from South Capitol Street and struck appellant, who was still standing on the shoulder between the Mitchell vehicle and the guardrail. As a result of that collision, appellant suffered severe injuries, including the partial amputation of his left leg, as well as serious damage, requiring reconstructive surgery and grafts, to his right leg.

Appellant filed this action in the Superior Court against Wright. Appellant also brought an action in the United States District Court for the District of Columbia against James Edward Jones; Cedar Hill Cemetery, Inc., which owned the vehicle driven by Jones; HIG Corporation, the par-

---

[*] Judge FERREN was an Associate Judge of this court at the time of argument. His status changed to Acting Chief Judge on March 18, 1994.

1. Appellant testified at trial that part of Mitchell's car, the part that "hangs over the tires," extended into the roadway; Mitchell, however, stated in her deposition, which was read to the jury, that her car "was all the way off the road."

2. At trial, Clayton Rainey, the tow truck operator at the scene, testified that Jones' demeanor and behavior gave him the impression that Jones was under the influence of alcohol because his eyes were red, he swayed back and forth, and there was a smell of alcohol on his breath. There was, however, testimony from Mitchell and appellee that they did not smell alcohol on Jones' breath.

3. According to Mitchell's testimony, Jones' car had to be travelling at an excessive speed because the engine would not be "roaring" otherwise.

ent company of Cedar Hill Cemetery; and Innovative Marketing Technology, Inc., Mr. Jones' employer (the "HIG defendants"). Appellant settled with the HIG defendants for $1.9 million. After this settlement with the HIG defendants, appellant entered into a stipulation with Wright, which provided that for purposes of liability, in case of a judgment in favor of appellant in Superior Court, Wright was to be considered a joint tortfeasor.

At the liability phase of the trial before Judge Webber, the jury returned a verdict finding Wright liable for appellant's injuries. Wright's motion for judgment notwithstanding the verdict or for a new trial was thereafter denied. In the damages phase of the trial before Judge von Kann, the jury awarded $1,900,000, which, apparently by coincidence, is identical to the sum received in the settlement with the HIG defendants. Judge von Kann, ruling that Wright was entitled to a *pro tanto* credit based on the settlement reached by appellant with HIG, entered a judgment of $0. Appellant now claims that Judge von Kann committed error because damages should have been reduced *pro rata* not *pro tanto*. Wright contends Judge Webber erred in his denial of the motion for judgment notwithstanding the verdict. As noted above, we conclude that the motion for the judgment notwithstanding the verdict should have been granted and we, therefore, do not consider the issue raised with respect to damages.[4]

## II.

■ We begin our analysis by observing that "[a] motion for judgment notwithstanding the verdict under Super.Ct.Civ.R. 50(b) may be granted only when the evidence, viewed in the light most favorable to the nonmoving party, permits only one reasonable conclusion as to the proper judgment." *Washington Welfare Ass'n, Inc. v. Poindex-*

*ter,* 479 A.2d 313, 315 (D.C.1984) (citation and internal quotation marks omitted). A judgment notwithstanding the verdict may only be awarded when "no juror could reasonably reach a verdict for the opponent of the motion." *McKnight v. Wire Properties Inc.,* 288 A.2d 405, 406 (D.C.1972) (citations and footnote omitted). "Thus, upon review of a judgment n.o.v., the question for us is not whether there is sufficient evidence in the record to support the findings and decision of the [trial] judge, but whether a jury of reasonable men [and women] could properly have reached a verdict in favor of appellant, the party upon whom the onus of proof was imposed." *Faniel v. Chesapeake & Potomac Tel. Co.,* 404 A.2d 147, 150 (D.C.1979) (citation and internal modifications omitted).

■ In negligence cases, such as the instant one, the question of proximate cause is usually a question of fact for the jury. *District of Columbia v. Freeman,* 477 A.2d 713, 716 (D.C.1984). "The question becomes one of law, however, when the evidence adduced at trial will not support a rational finding of proximate cause." *Id.* (citation omitted).[5] "Proximate cause is a test of whether the injury is the natural and probable consequence of the negligence or wrongful act and ought to be foreseen in light of the circumstances." *Ceco Corp. v. Coleman,* 441 A.2d 940, 944 (D.C.1982) (citations and internal modification omitted). A third party's negligence is a superseding cause of harm "where the original actor should not have anticipated that act." *Id.* (citations omitted). "A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." RESTATEMENT (SECOND) OF TORTS § 440, at 465 (1965). Therefore, Wright's primary negligence could only be

4. Appellee Wright also challenges the jury instruction on the issue of superseding cause. Since we conclude that the trial court erred in submitting the case to the jury, we do not reach that issue either.

5. *See also McCoy v. Quadrangle Dev. Corp.,* 470 A.2d 1256, 1259 (D.C.1983) (if there are no facts or circumstances from which a jury could rea-

sonably find that negligence is the proximate cause of the injury, the question is one for the court); *Washington Metro. Area Transit Auth. v. Jones,* 443 A.2d 45, 50 (D.C.1982) (en banc) (only in cases where only one conclusion can be drawn should the trial court rule as a matter of law on negligence and proximate cause).

the proximate cause of appellant's injuries if it "played a substantial part in bringing about the injuries ... [and the injury] was either a direct result or a reasonably probable consequence of the act." *Freeman, supra*, 477 A.2d at 715 (quoting STANDARDIZED CIVIL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 5.11 (Rev. ed. 1981)).

■ There is no dispute that Wright caused the initial collision after losing control of his vehicle. The evidence established that the Mitchell vehicle collided with Wright's vehicle after it had spun out-of-control, into the path of the Mitchell vehicle. There was also uncontradicted testimony that the cars came to rest on the shoulder of the road fifteen to thirty feet from the site of the initial impact. Although there was differing testimony about whether any part of the Mitchell vehicle jutted into the highway, there is no dispute that all four of the tires were entirely off the roadway and on the shoulder of the road. There was also evidence that after the vehicles came to rest, traffic continued to pass the scene, without incident, and there was no indication that any of the following vehicles were unable to safely proceed past the accident scene. Indeed, at least five and as many as ten minutes went by, with traffic uneventfully passing the two vehicles, before the Jones vehicle struck appellant while he was standing between the Mitchell vehicle and the guardrail. Finally, there was also evidence that an off-duty police officer arrived on the scene shortly after the initial collision and then departed without taking any steps that would suggest concern on the officer's part that the two vehicles posed a hazard. On these facts, we conclude as a matter of law that Wright's negligence was too remote, in space and especially in time, from appellant's injuries; that Jones' negligence was a superseding cause, and that no impartial jury could reasonably reach a contrary conclusion.

Appellant contends, however, that Wright "effectively [placed appellant] into a position of peril on the shoulder of a heavily travelled interstate highway on a rainy, winter night— exposing him to precisely the sort of hazard that ultimately brought about his injury— [and] was a substantial factor in causing that injury." He relies on *Walton v. Tull*, 234 Ark. 882, 356 S.W.2d 20 (1962), contending that the "facts of *Walton* are sufficiently close to those of this case so as to compel the conclusion that, here too, the question of whether [appellee's] negligence proximately caused [appellant's] injury is one properly for the jury to decide." Appellant's reliance on *Walton* is misplaced.

In that case, Tull was a passenger in a station wagon being driven by Walton. As Walton attempted to pass another car, driven by Brigham, the Brigham car began a left-turn, causing the two vehicles to collide. The vehicles "came to a stop on the lefthand shoulder of the highway, facing in their original direction of travel." *Walton, supra*, 356 S.W.2d at 21. Brigham's vehicle was completely off the road, while Walton's vehicle was at an angle with "the right rear wheel encroaching on the pavement a foot or two." *Id.* "About *ten seconds* after the station wagon came to a stop Tull, who was in the right front seat, opened the door on his side and started to get out. As he extended his left leg toward the pavement the open door was struck by a car [driven by Glenn] traveling in the direction opposite to that of the other two vehicles." *Id.* (emphasis added).

Tull brought suit against Brigham, Walton, and Glenn. The jury "assigned 60 per cent of the negligence to Glenn, 20 per cent to Walton, 10 per cent to Brigham, and 10 per cent to Tull." *Id.* On appeal, Walton claimed that his negligence in attempting to pass Brigham was not the proximate cause of Tull's injuries. The Arkansas Supreme Court held that although Walton could not foresee the manner in which Tull was to be injured, the injury was a direct result of Walton's carelessness in placing Tull in a hazardous position. The court, however, determined that the vital question was whether the subsequent conduct of Glenn and Tull became a superceding factor. In rejecting the claim that Walton was not the proximate cause of Tull's injuries, the court held that it was not "highly extraordinary" that Tull would "have been excited or confused" when stepping out of the car, nor was it "highly extraordinary" that Tull could be struck by a passing car. *Id.* at 23. Therefore, the ques-

tion of whether Walton's negligence was the proximate cause of Tull's injury was for the jury to decide.[6]

There are at least two crucial differences— one temporal and one spatial—between the facts of *Walton* and the circumstances of the instant case. The principal difference is the time gap between the first and second collisions. In *Walton*, the second collision occurred when Tull stepped out of the right side of the vehicle only ten seconds after the initial collision. Here, it is not disputed that between five and ten minutes elapsed between the first and second collision. The *Walton* court concluded that because of the brief passage of time, it was not "highly extraordinary" that Tull became either excited or confused. No such inference, however, could be drawn in this case. Indeed, by all accounts, appellant calmly stood between Mitchell's vehicle and the guardrail from the time he exited Mitchell's vehicle until he was struck by the vehicle driven by Jones.

Moreover, in *Walton*, the cars came to rest on the left side of the roadway, pointing in the direction opposite to the approaching vehicle which struck him, with Walton's car *extending* one to two feet onto the roadway. It is under those circumstances that a presumably excited or confused Tull stepped out of the Walton vehicle on the side closest to traffic and directly into the path of the Glenn vehicle. In contrast, appellant exited the Mitchell vehicle onto the shoulder on the right side of the highway, at least one car width away from the traffic lanes, to what would appear to have been a relatively safe haven—appellant was off the roadway and he was shielded by the Mitchell vehicle from oncoming traffic. The primary negligence in *Walton* was still in motion when Tull was struck by the Glenn vehicle. In this case, however, the activity caused by the initial negligence had come to rest and appellant was standing—and had been for five to ten minutes—at least one car width away from approaching traffic when he was struck by the Jones vehicle.

On these facts, we conclude that proximate cause was lacking because although Wright created the situation with the initial collision, that negligence was not the proximate cause of appellant's injury. As a matter of law, the injury in this case was caused by a new and independent force that broke the chain of causal connections with the original wrong; therefore, Wright, as the initial tortfeasor, is not liable for the injury inflicted by Jones. *See, e.g., Grant v. District of Columbia*, 597 A.2d 366, 368–69 (D.C.1991) ("Where two tortfeasors are involved, the unforeseeable action of the subsequent tortfeasor may be a 'superseding cause' which breaks the chain of causation.") (citations omitted); *Ceco Corp., supra*, 441 A.2d at 944.

Wright relies on *Owens v. Simon*, 245 Md. 404, 226 A.2d 548 (1967), which provides some support but does not compel the result reached here because the circumstances presented in *Owens* go somewhat beyond the facts of this case. *Owens*, however, does set forth with clarity the legal principles we find applicable in this case. In *Owens*, a vehicle driven by Simon collided with the Owens vehicle after Simon failed to stop at a stop sign. A police officer arrived at the scene a few moments later and instructed Owens to move his vehicle out of the intersection. As Owens was doing so, his "car moved forward at a rapid rate of speed striking [the] [o]fficer." *Id.* 226 A.2d at 549. The officer subsequently died; and an action was brought on his behalf against both Owens, due to his negligence in striking the officer, and Simon as the original tortfeasor.

The Maryland Court of Appeals rejected the contention that Simon was the proximate cause of the officer's death because Simon could not have reasonably foreseen that his negligence would cause the death of a police officer and because his negligence "had come to rest and an independent intervening cause had taken dominion over the action." *Id.* at 552. The court also concluded that where a reasonable jury could "draw but one infer-

---

**6.** The Arkansas court held that the intervening negligent act of a third person does not make it a superseding cause, and does not relieve the original tortfeasor, if a reasonable person "knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted." *Walton, supra*, 356 S.W.2d at 22 (quoting RESTATEMENT, *supra*, at § 447).

ence from the facts as presented, the trial court may resolve the issue in dispute as a matter of law." *Id.* at 551 (citations omitted). As we observed above, the facts in *Owens* present circumstances that are somewhat beyond what was established here. Nonetheless, we are satisfied that Wright's negligence had come to rest just as Simon's negligence had and that no impartial juror could have reasonably come to a contrary conclusion. In those circumstances, therefore, the original tortfeasor is not liable for injury caused by the subsequent intervening cause.

In sum, we hold as a matter of law that the sequence of events put into motion by Wright's primary negligence came to rest at some point after appellant exited the Mitchell car and began standing in an apparently safe place between the car and the guardrail, but before the Jones vehicle came onto the scene and struck him. There is no evidence that appellant was confused, disoriented, or excited as was the injured person in the *Walton* case. He was simply standing and waiting for emergency personnel when he was seriously injured by an independent superseding act of negligence for which Wright cannot be held responsible.

Accordingly, we hold that the trial court erred in denying the motion for judgment n.o.v. Therefore, we remand the case with directions to enter a judgment notwithstanding the verdict.

*Reversed and remanded.*

FERREN, Acting Chief Judge, dissenting:

In this case, the Mitchell–Wright accident, followed five to ten minutes later by Jones' collision with Sanders, took place on a late evening of a rainy day. Visibility was fair; traffic was heavy. After the Mitchell–Wright accident, Mitchell discovered Wright "slumped over his steering wheel" with head injuries. *Ante* at [848]. Mitchell and appellant Sanders (Mitchell's passenger) remained at the scene with the injured man while an off-duty police officer happened by, saw what happened, and left to obtain "police and rescue assistance." *Ante* at [848]. As a result of Wright's negligence, Mitchell's car remained partly in the road, creating a dangerous obstruction affecting traffic passing the accident scene.[1]

Under these circumstances, I cannot say Sanders' failure to leave the scene, or to find a safe haven in the area of the off-ramp, within five to ten minutes of the injury, amounted—as a matter of law—to a break in the chain of causation; Jones' negligence in striking Mitchell's car and injuring Sanders did not amount to a superseding cause of Sanders' injury that altogether exonerated Wright from a jury-triable negligence claim.[2]

Respectfully, therefore, I dissent.

1. The right front end of Mitchell's Thunderbird was against the right guardrail, but, according to Sanders' testimony "[t]he left rear of the car was in the road"; the tire was not in the road, but the part of the car that "hangs over the tires ... was out in the road." Sanders further testified at trial that after the accident, the cars that passed by "weren't in the right lane. They were going around. So, something had to be in the road, or they wouldn't have gone around us."

2. *See, e.g. Morrison v. Frito–Lay, Inc.,* 546 F.2d 154 (5th Cir.1977) (negligence of truck driver, when he encountered engine trouble, in parking truck with at least two feet protruding onto highway was proximate cause of subsequent accident which occurred when motorist collided with portion of truck protruding onto highway and came to rest in center of highway causing collision between two other automobiles); *Hester v. Miller,* 41 N.C.App. 509, 255 S.E.2d 318 (1979) (as to rear-end collisions between vehicles slowing or stopping without proper warning signals, and following vehicles, driver of preceding vehicle is not relieved of liability unless second, independent act of negligence could not reasonably have been foreseen; it is not necessary that entire sequence of events be foreseen, but only that some injury would occur); *Dickenson v. Tabb,* 208 Va. 184, 156 S.E.2d 795 (1967) (where negligence of deceased driver had caused both lanes of highway to be blocked and situation continued to time when another automobile collided with one of the wrecked automobiles, decedent's negligence created situation and started chain of events from which further injury occurred as proximate result, and motorist who negligently struck wrecked vehicle was not superseding

cause); *Johnson v. Heintz*, 73 Wis.2d 286, 243 N.W.2d 815 (1976) (jury could have found that first car accident, which occurred during blizzard and left one car protruding onto two-lane highway, was proximate cause of two subsequent accidents in which plaintiff's car struck preceding car, and another car traveling in opposite direction struck plaintiff's car in an attempt to avoid collision with protruding car from earlier accident).