**Bernard S. LEVI, Appellant**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 94–CV–894.**

District of Columbia Court of Appeals.

Submitted May 23, 1996.
Decided July 17, 1997.

---

Bernard S. Levi, filed a brief pro se.

Garland Pinkston, Jr., Acting Corporation Counsel at the time the brief was filed, Charles L. Reischel, Deputy Corporation Counsel, and Mary L. Wilson, Assistant Corporation Counsel, were on the brief for appellee.

Before WAGNER, Chief Judge, TERRY, Associate Judge, and GALLAGHER, Senior Judge.

TERRY, Associate Judge:

Appellant Bernard Levi, now a prisoner at the Allenwood Federal Penitentiary in Pennsylvania, filed an action for negligence against the District of Columbia based on injuries he suffered while he was incarcerated at the Occoquan Facility, part of the District's correctional complex at Lorton, Virginia. Mr. Levi was injured when he slipped and fell on a wet floor at Occoquan. The jury returned a verdict in favor of the District, and the trial court later denied Mr.

Levi's motion for judgment notwithstanding the verdict. On appeal he argues that the court erred in denying that motion. He also claims that the court violated his rights by allowing him to testify by videotape instead of requiring him to be transported from his place of imprisonment in Pennsylvania to testify in person. We reject both arguments and affirm the judgment.

I

Levi was a prisoner at the Occoquan Facility when he slipped and fell in the prison dining hall. His complaint alleged that the District of Columbia had been negligent in failing to take reasonable steps to prevent water from leaking and accumulating on the floor, in failing to warn the prisoners of the danger posed by this standing water, and in failing to provide him with adequate medical care after he fell. Mr. Levi claimed that as a result of his fall, which occurred in December 1992, he sustained debilitating injuries for which he sought $200,000 in damages.

At the time of trial, Levi was incarcerated at the federal prison in Allenwood, Pennsylvania, serving sentences for a series of nine bank robberies.[1] A few weeks before the trial began, the court granted an unopposed motion, filed by Levi's counsel, for leave to take Levi's deposition by videotape at the prison for use at trial. Before the deposition was actually taken, however, the court received a petition from Mr. Levi himself for a writ of habeas corpus *ad testificandum*, in which he asked to be transported from Pennsylvania to the District of Columbia so that he could be present at the trial and personally testify before the jury. The court denied the motion on two grounds. First, it ruled that because Levi was represented by counsel, it was "inappropriate" for him to file his own *pro se* habeas corpus petition. Second, addressing the merits of Mr. Levi's request, the court noted that it had already granted Levi the right to present his testimony through a videotaped deposition, and thus it refused to require the United States Marshals Service to bear the cost of transporting

him from Pennsylvania. The deposition took place as planned, and soon thereafter the case went to trial.

The evidence of negligence was presented by Levi and two former inmates at Occoquan. Vernon Ray, one of the two former prisoners, testified that he was sitting in the dining hall at Occoquan when he saw Mr. Levi slip on some water that had been leaking from a hole in the ceiling. Levi fell to the floor and, according to Ray, was so badly injured that he had to be carried away on a stretcher. Ray said that the authorities at Occoquan knew the ceiling had serious leaks in it, but took no action to warn the inmates of the danger. Warren Youmans, another prisoner at the time of the incident, testified that neither buckets, to catch the falling water, nor warning cones, to mark the wet area, had been placed in the dining hall because the prison authorities feared that such objects might be used as weapons in a fight. Youmans said that when Mr. Levi slipped on the wet floor, his feet "went right up from under him," and he "landed straight on his buttocks...." Youmans also stated that Levi lay on the floor for five to ten minutes before a stretcher was brought to remove him.

In his own videotaped testimony, Mr. Levi stated that after he slipped and landed on his back, he was immediately in such pain that he could not even get up. After lying on the wet floor for several minutes, he was taken to the prison infirmary, where he was given Motrin, an analgesic. In the weeks following his fall, his pain became more and more intense, radiating into his lower legs and making it difficult for him to walk. Levi testified that although an orthopedist had given him medication, a back brace, and a bed board, he still suffered from back pain "all the time."

During his testimony, Mr. Levi acknowledged that in 1983 he had been in an automobile accident, which caused such severe pain that he was forced to undergo surgery to remove two ruptured disks from his spinal column. The pain continued, however, so

1. *See United States v. Levi*, 310 U.S.App. D.C. 152, 45 F.3d 453, *cert. denied*, 515 U.S. 1133, 115 S.Ct. 2560, 132 L.Ed.2d 813 (1995).

that in 1985 he went back to the hospital for further tests and treatment. His back condition was not helped by his work as an animal technician, "taking care of the laboratory animals for the scientists" at the National Institutes of Health, where he was required to engage in "a lot of physical activity, you know, a lot of lifting and walking and standing and moving around."

Dr. John Lossing, a neurologist, testified as an expert witness on Mr. Levi's behalf.[2] Dr. Lossing acknowledged that Mr. Levi had been diagnosed as having a herniated disk in January 1985, a condition that would "cause pain which would radiate in a shooting fashion down the leg." In addition, he had injured his back when he fell from the top bunk in his prison cell in May 1992. Despite this history of lumbosacral injury and other back problems,[3] Dr. Lossing opined that Mr. Levi's fall at Occoquan was the likely cause of his present pain. After reviewing the medical records which documented Levi's more frequent treatments for back pain after he fell in the dining hall, Dr. Lossing said, "My opinion is that the injury he suffered involving a slip and fall, landing on his back, probably worsened his pre-existing condition of lumbosacral injury."

The District's only witness was Dr. William Peterson, a physician at District of Columbia General Hospital who was accepted by the court as an expert in neurology. After an extended review of the relevant medical records, Dr. Peterson testified that Mr. Levi's back problems, including his herniated disks and arthritis, were already substantial before he fell in the dining hall at Occoquan, and that it was unlikely that this fall worsened his condition. Specifically, Dr. Peterson said that Levi's medical records revealed that in 1983 he had a laminectomy, which the doctor described as a procedure in which the lamina (the bone-like housing of the spinal cord and accompanying nerve roots) "is actually removed from the spine itself ... [in order to relieve pressure] on the spinal cord or nerve roots." In addition, a lumbar myelogram in 1985 showed that Mr. Levi suf-

fered from a deviation of the nerve root in the L–5 and S–1 area of his back and had a herniated disk in that same area. In 1990, Dr. Peterson testified, Mr. Levi went to the emergency room at D.C. General Hospital complaining of severe back pain, but with no immediately preceding trauma. The doctor explained that with a back condition such as Mr. Levi's, no trauma is necessary to induce pain; activities as seemingly harmless as sitting, twisting, or lifting a child can cause the type of severe pain that brought him to the emergency room. Then, in May 1992, Mr. Levi suffered pain in his neck, cervical and lower back, and lumbosacral spine when he fell from his bunk bed. On three occasions thereafter—twice in August and once in October—Mr. Levi sought medical attention for his continued pain. According to the records, muscle relaxants and pain medication were often prescribed to alleviate the pain that restricted his range of motion and prevented him from bending over. All of these back problems existed before Mr. Levi slipped and fell at Occoquan in December 1992.

The jury returned a verdict in favor of the District. The verdict form shows that while the jurors found that the District had been negligent, they also found that the District's negligence was not the proximate cause of Mr. Levi's injuries. Four days after the verdict was returned, Mr. Levi filed a *pro se* motion for a judgment n.o.v., arguing that the court should have entered judgment in his favor as a matter of law without submitting the case to the jury. This motion was denied.

II

■ On appeal, Mr. Levi claims that the trial court erred in denying his motion for judgment n.o.v. He maintains that the jury's verdict was unreasonable, given the evidence presented. We disagree.

■ A motion for judgment notwithstanding the verdict (now known as judgment as a

---

2. Dr. Lossing's testimony was also presented in the form of a videotaped deposition.

3. On cross-examination Dr. Lossing said that medical records dating from August 1993 showed that Mr. Levi also had arthritis in his back.

matter of law) may be granted only when the evidence, viewed in the light most favorable to the non-moving party, permits only one reasonable conclusion in favor of the moving party. *E.g., Sanders v. Wright*, 642 A.2d 847, 849 (D.C.1994); *Washington Welfare Ass'n v. Poindexter*, 479 A.2d 313, 315 (D.C. 1984). In other words, a motion for judgment n.o.v. should be granted only when no juror could reasonably reach a verdict for the opponent of the motion. *Sanders v. Wright, supra; McKnight v. Wire Properties, Inc.*, 288 A.2d 405, 406 (D.C.1972). In a negligence action such as this one, the question of proximate cause is usually a question of fact for the jury. *District of Columbia v. Freeman*, 477 A.2d 713, 716 (D.C.1984); *District of Columbia v. Cooper*, 445 A.2d 652, 655 (D.C.1982) (en banc). "It is only in cases where it is clear that reasonable [persons] could draw but one conclusion from the facts alleged that negligence and proximate cause become questions of law." *Hill v. McDonald*, 442 A.2d 133, 137 (D.C.1982). Applying these principles, we hold that the trial court committed no error in letting the case go to the jury.

Dr. Lossing testified that, in his opinion, Mr. Levi's fall in the dining hall at Occoquan "probably worsened his pre-existing condition of lumbosacral injury." But the District presented contrary testimony from Dr. Peterson, to the effect that Mr. Levi's back pain would have continued, and perhaps even grown worse, regardless of that fall. The jury was thus presented with a classic testimonial conflict between experts, and it chose to accept Dr. Peterson's testimony over that of Dr. Lossing, finding that the District's negligence was not the proximate cause of Mr. Levi's injuries.

We find no error in the court's decision to submit the case to the jury; indeed, the court would have erred had it not done so. *See, e.g., Robinson v. Group Health Ass'n*, 691 A.2d 1147, 1150–1151 (D.C.1997). Nor did the court err in denying Mr. Levi's motion for judgment n.o.v. "A judgment notwithstanding the verdict is proper only in 'extreme' cases, in which no reasonable person, viewing the evidence in the light most favorable to the prevailing party, could reach

a verdict in favor of that party." *Oxendine v. Merrell Dow Pharmaceuticals, Inc.*, 506 A.2d 1100, 1103 (D.C.1986) (citations omitted). This is not one of those "extreme" cases.

### III

Mr. Levi contends that the trial court committed reversible error when it prohibited him from testifying at his own civil trial. We disagree, for two reasons. First, Mr. Levi cannot now complain of any alleged prejudice resulting from the presentation of his testimony by videotape when permission to offer videotaped testimony was granted at the request of his own counsel. Second, Mr. Levi had no absolute right to attend his trial, and he has not shown either an abuse of discretion on the part of the trial court in denying his *pro se* request to testify in person, or prejudice resulting from his absence.

Mr. Levi's testimony was presented to the jury by videotape because the court granted a motion filed by his trial counsel for leave to do so. In the District of Columbia and generally, "the acts and omissions of counsel are imputed to the client even though detrimental to the client's cause." *Railway Express Agency, Inc. v. Hill*, 250 A.2d 923, 926 (D.C.1969); *accord, e.g., Link v. Wabash R.R.*, 370 U.S. 626, 633–634, 82 S.Ct. 1386, 1390–1391, 8 L.Ed.2d 734 (1962). Absent a showing of extraordinary circumstances, which Mr. Levi has not made, he is bound on appeal by the actions of his counsel in the trial court. His present challenge to his videotaped testimony cannot be heard because a litigant may not take one position at trial and a contradictory position on appeal. *Hackes v. Hackes*, 446 A.2d 396, 398 (D.C. 1982); *accord, Brown v. United States*, 627 A.2d 499, 508 (D.C.1993).

But even assuming for the sake of argument that the court should have considered Mr. Levi's *pro se* petition to appear at trial and ignored the contrary prior request of his counsel, the court's denial of the *pro se* petition must be affirmed. The Supreme Court has stated:

Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. Among those so limited is the otherwise unqualified right given by [statute] to parties in all the courts of the United States to "plead and manage their own causes personally."

*Price v. Johnston,* 334 U.S. 266, 285–286, 68 S.Ct. 1049, 1060–1061, 92 L.Ed. 1356 (1948) (citation omitted). This court has not yet decided whether a prisoner has a right to attend a civil trial in which he is a party, but several federal courts, reading the Supreme Court's *Price* opinion, have held that the decision whether to grant a prisoner's request to attend his civil trial is within the discretion of the trial court. *See, e.g., Michaud v. Michaud,* 932 F.2d 77, 81 (1st Cir. 1991); *Poole v. Lambert,* 819 F.2d 1025, 1028 (11th Cir.1987); *Holt v. Pitts,* 619 F.2d 558, 561 (6th Cir.1980), *aff'd after remand,* 702 F.2d 639 (1983).[4] Among the factors to be considered are the burden on the state in transporting and securing the prisoner and the existence of alternative means for presenting the testimony sought. *Michaud, supra,* 932 F.2d at 81. A court may also take into account "whether the prisoner has any other witnesses to call at trial or whether ... the prisoner is the only person who can render testimony consistent with the allegations of his complaint...." *Stone, supra* note 4, 546 F.2d at 736. In addition, prejudice to the prisoner is minimized when the prisoner-litigant is represented by counsel, as Mr. Levi was in this case. *Helminski, supra* note 4, 766 F.2d at 213.

We are fully satisfied that the trial court did not abuse its discretion by adhering to its decision permitting Mr. Levi to present his testimony by videotape and by denying his request to be brought personally to the courtroom. The court saw no need to require the Marshals Service to incur the expense of transporting and guarding Mr. Levi when arrangements for the videotaping had already been made. Moreover, he was well represented by able counsel, whose proof of Mr. Levi's fall and the District's negligence was presented through direct eyewitness testimony that was essentially uncontested.

Most importantly, Mr. Levi has not shown any prejudice resulting from his absence. The jury found the District negligent in allowing the conditions that Mr. Levi and his fellow inmates described in their testimony. The critical issue for the jury, however, was not whether the District had breached its duty of care, but whether Mr. Levi's fall on the dining room floor was the proximate cause of his pain. The evidence of proximate cause came not from Mr. Levi, but from Dr. Lossing. The jury weighed Dr. Lossing's testimony against the conflicting testimony of Dr. Peterson and decided that Dr. Peterson's testimony was more credible. It was of no consequence to the jury's verdict that Mr. Levi was absent from the trial because his testimony had no bearing on this crucial issue. There being no consequence, there can be no resulting prejudice.

The judgment of the trial court is therefore

*Affirmed.*

---

4. Although the specific issue in *Price* was whether a prisoner had the right to attend an appellate proceeding and argue his own habeas corpus appeal, federal courts have applied the holding in *Price* to trial proceedings as well. *Stone v. Morris,* 546 F.2d 730, 735 n. 6 (7th Cir.1976); *see Holt v. Pitts, supra,* 619 F.2d at 560 ("[g]enerally speaking, prisoners who bring civil actions ... have no right to be personally present at any stage of the judicial proceedings"); *see also Helminski v. Ayerst Laboratories,* 766 F.2d 208, 213 (6th Cir.) ("[n]either the Fifth Amendment's due process clause nor the Seventh Amendment's guarantee of a jury trial grants to a civil litigant the absolute right to be present personally during the trial of his case"), *cert. denied,* 474 U.S. 981, 106 S.Ct. 386, 88 L.Ed.2d 339 (1985).