Richard COSIO, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 06–CV–1037.

District of Columbia Court of Appeals.

Submitted Dec. 7, 2007.

Decided Jan. 17, 2008.

————————

Richard Cosio, pro se.

Robert J. Spagnoletti, Attorney General for the District of Columbia at the time, Todd S. Kim, Solicitor General, and Edward E. Schwab, Deputy Solicitor General, filed a brief for the District of Columbia.

Before FARRELL, REID, and GLICKMAN, Associate Judges.

FARRELL, Associate Judge:

Appellant (hereafter Cosio) sued the District of Columbia for negligence based on injuries he allegedly suffered when he slipped and fell in a shower area at the Lorton Maximum Security Facility, where he was imprisoned at the time. The complaint alleged that Cosio had fallen "due to an accumulation of water . . . on the floor" which in turn resulted from "the shower stalls leaking water and broken water pipes," and that the District, which operated the prison, had been (at least) constructively aware of the accumulating water and had done nothing about it.

After the trial court initially granted summary judgment to the District, this court reversed in light of the District's concession that Cosio, a prisoner, had not been given adequate opportunity to oppose the motion for summary judgment. On remand, the trial court again entered judgment for the District. The judge read the complaint and Cosio's newly-filed opposition as alleging that the water pipes in the shower area were defective, that "inspections [of the pipes] should have been made, and that 'inspectors presumably could have discovered the water leaking caused by

defective pipes in the exercise of reasonable care' " (in part quoting Cosio's opposition). Concluding that "[e]ach of these [allegations implicates] knowledge of specialties outside the ken of a lay juror and requires expert testimony," the judge granted summary judgment to the District because "there has been no identification of [Cosio's] experts in accordance with [Super. Ct. Civ.] Rule 26(b)(4)," despite adequate opportunity for him to have named an expert.[1]

We again reverse. In support of the judge's ruling, the District contends that "[e]xpert testimony was necessary to establish a standard of care since the appropriate standards for inspecting and maintaining the showers and physical plant of a prison are not within the ken of an ordinary lay juror" (Br. For District at 5). We think, however, that this mistakes the broader—and simpler—allegations at the heart of Cosio's claim, i.e., that the District allowed water to collect on the floor of the shower area and, despite notice of the condition, failed to prevent or correct it, for a narrower claim of failure "to inspect and maintain." While matters such as appropriate inspection and maintenance schedules for prison facilities would, indeed, require expert testimony to elucidate them, Cosio's theory—bolstered in part by the affidavit of a fellow prisoner claiming to have seen "water all over the floor for weeks" near the shower stalls—depended on no such esoterica: he alleged rather a failure to remove a hazard open and notorious, and which could be corrected or at least warned against by the exercise of ordinary care. This court's analogous decisions do not require expert testimony to prove such a claim.

---

1. The judge did not reach the additional defenses the District had interposed of contributory negligence and assumption of risk.

## I.

As stated, Cosio's complaint (seeking $350,000 for injuries resulting from the slip and fall) alleged that the prison authorities had ample notice of the accumulating water and had failed to correct the condition or give notice by "post[ing] warning signs or the usual orange-safety cones." The trial court initially dismissed the claim because, in its view, the undisputed facts showed that the District had no notice of the alleged condition in time to correct it. Cosio, the court wrote, "would need" but had not proffered "expert testimony regarding the length of time the District should have been aware of the defective pipes and any water flowing therefrom." On appeal, however, in conceding that Cosio had been denied the opportunity to oppose its summary judgment motion, the District appeared to recognize the weakness in the trial court's analysis, candidly stating: "In our view, issues of actual or constructive notice of a dangerous condition are normally within the province of the fact-finder without a need for expert testimony" (citing cases).

When the case was returned to the trial court, Cosio's newly-filed opposition contained an affidavit by Maurice Sykes, a fellow-prisoner at the time of the incident, asserting that he had seen Cosio fall in a "pool of water" in the shower area which "was a result of broken water pipes and ... shower stalls that had been leaking water all over the floor for weeks, making a hazardous condition." Nevertheless, the trial court again granted judgment to the District based on Cosio's failure to proffer expert testimony. The court read his opposition as stating a claim, not of failure to remove a known (or constructively known) hazard, but of failure timely to inspect and maintain prison shower facilities, and agreed with the District—which now took a different view of the matter—that standards such as scheduling for inspection and maintenance of this kind are beyond the knowledge of lay jurors.

## II.

In his opposition to summary judgment, Cosio did assert that among the triable issues of fact is "whether or not prison maintenance inspections [were] conducted frequently and carefully enough to be reasonable under the circumstances," the answer to which would "depend on the timing of the inspections in relation to the cause of the water leakage." If statements such as this were all, or even at the core of what Cosio was alleging, the trial court would have been correct that expert testimony was necessary to prove the District's negligence. *See, e.g., Messina v. District of Columbia*, 663 A.2d 535, 538 (D.C.1995). In deciding whether summary judgment is appropriate, however, courts must view the allegations of the complaint and supporting documents in their entirety. *See, e.g., Williams v. Gerstenfeld*, 514 A.2d 1172, 1175–76 (D.C.1986). Viewed that way, Cosio's claim is not reducible to one that prison authorities breached standards of the profession for inspecting and maintaining prison facilities such as showers. In the same opposition the trial court relied on, Cosio pointed to interrogatory answers by the District conceding that two prison guards "may have witnessed" his slip and fall, implying—in Cosio's view— that they or other guards had been in a position beforehand to see and warn against what he again termed "the accumulation of water ... leaking from shower stalls." Cosio further cited Sykes's affidavit as "supporting a claim that the alleged defect had been present for a long period of time (*i.e.,* 'for weeks') such that the District should have been aware of the defect." Fairly read, then, the complaint and opposition alleged the presence of an ongoing hazardous condition that the authorities knew or should have known about yet failed to remedy or at least warn

against. If, indeed, Cosio were able to convince a jury that officials had allowed a known hazard to persist without taking corrective action, it is not apparent to us why a finding of negligence would still have depended on proof by expert testimony.

To support the trial court's ruling, the District cites a number of our decisions regarding the standard of care owed to persons in government custody, where we have held that expert testimony was necessary to prove objective—*i.e.*, national—standards related to "the protection and safekeeping of prisoners" or arrestees. *Toy v. District of Columbia*, 549 A.2d 1, 6 (D.C.1988). In *District of Columbia v. Peters*, 527 A.2d 1269 (D.C.1987), for example, expert testimony was necessary to help a jury decide whether police officers had been adequately trained to deal with arrestees who are mentally disturbed or under the influence of drugs, a question that "could be answered only if the jury was made aware of recognized standards concerning such training." *Id.* at 1273. Similarly related "distinctly ... to some science [or] profession," hence requiring expert elucidation, are standards of care custodians must follow in the case of inmates posing a danger of suicide, *Clark v. District of Columbia*, 708 A.2d 632, 634–36 (D.C.1997); *Toy*, 549 A.2d at 7–8, or the minimum standard security measures required to prevent the use of contraband weapons in prisons. *District of Columbia v. Carmichael*, 577 A.2d 312 (D.C.1990); *see also District of Columbia v. Moreno*, 647 A.2d 396, 398–99 (D.C.1994) (standards of care regarding inmate control of telephones and control of inmate movement require expert testimony).

In all of these cases, deciding whether the District was negligent or not required the jury to apply standards embodying specialized knowledge that enabled it to distinguish occurrences and injuries that are a regrettable but probably unavoidable part of the custodial setting, *see, e.g., id.* at 398 (prisons such as Lorton are "often not risk-free," so that the District "is not *ipso facto* liable for ... injuries" to an inmate assaulted by another), from those the District could reasonably foresee would happen unless preventive measures standard to the profession were in place. Cosio, by contrast, alleges that an unsafe condition existed that was known or readily knowable to the prison authorities, and that they did nothing to remedy it "for weeks" before he was injured. He asserts, in other words, that all a jury will have to decide is whether enough water had collected on the shower-area floor to create a hazard, and whether the District knew of the hazard in time to remove it or warn of its presence—issues as to which, he claims, "it is not [even] apparent how an expert's [choice of standards] would be superior to that of a lay jury exercising sound judgment." *Williams v. Lucy Webb Hayes Nat'l Training School*, 924 A.2d 1000, 1004 (D.C.2007). We agree with Cosio.

The distinction can be seen by comparing this case to one the District cites, *Rajabi v. Potomac Elec. Power Co.*, 650 A.2d 1319 (D.C.1994). There the issues of notice and opportunity to remediate did in fact depend—in the District's words here—on whether "a standard of care for ... periodic inspection and maintenance" existed. The plaintiffs had sued PEPCO and the District government alleging injury from a car accident that occurred when a defective street light fixture fell on their car. *Id.* at 1321. The defendants concededly had no actual knowledge of the defect, but the plaintiffs claimed that it would have been discovered had they followed the maintenance schedule outlined in a contract between PEPCO and the District. *Id.* Like the trial judge, this court rejected that argument because the plaintiffs had not proffered an expert on standard of care:

Whether a particular maintenance schedule for street lights, such as that set forth in a contract, is sufficient to protect passers-by from the hazard of falling light globes is not within the knowledge of the average lay person. Thus expert testimony was required to show that adherence to the schedule ... would have prevented the globe from falling on [the plaintiffs'] car.

*Id.* at 1322. If, by contrast, Cosio and his witness are believed, then a hazard existed here requiring no investigation through periodic inspection or maintenance to discover it; instead it was there to be seen— it was not a *latent* defect, as in *Rajabi*—by prison guards who had witnessed his fall and inferentially (they or others) had been on the scene during the "weeks" beforehand when the water collected.

The decisions most closely resembling this one, we believe, are the straightforward "notice" cases the District cited when, as mentioned earlier, it agreed to a remand to allow Cosio to file his opposition. Thus, in *Lynn v. District of Columbia*, 734 A.2d 168 (D.C.1999), in which the plaintiff had fallen and broken her knee after tripping on uneven ground where the curb of a street met a treebox, the trial court dismissed her suit for negligence because she had "failed to present prima facie evidence of constructive notice" by the District. *Id.* at 170. In reversing, however, we said that "[i]f the treebox was as damaged as [the plaintiff] claimed for as long as she claimed, a fact finder could have inferred that the police would have seen it and had sufficient notice of the problem to give rise to the District's duty to correct it." *Id.* at 171. Nowhere, importantly, did we imply that the plaintiff would have to present expert testimony on

the issues of notice and opportunity to correct. Nor did we do so in *Levi v. District of Columbia*, 697 A.2d 1201 (D.C. 1997), a case factually very close to this one. There we affirmed the denial of a motion for judgment NOV following a jury verdict against the District in a suit by a prisoner who had slipped and fallen on a wet floor (caused by a leaking ceiling) at Lorton's Occuquan Facility. We summarized the plaintiff's lay evidence of negligence, consisting of testimony by two former inmates and the plaintiff to the effect that the authorities had known of the leaking ceiling but took no action to fix it or warn the inmates of the slippery condition. *Id.* at 1203. The only experts we mentioned were medical professionals who explained the extent of the plaintiff's injuries and debated whether they were from a pre-existing condition or caused by the slip and fall. *Id.* at 1204. Nothing in the opinion, in short, suggested that expert testimony had been presented or was necessary on the issues of notice and duty to correct.

To summarize, the issues a jury would decide in this case concerning negligence are whether the hazard Cosio alleged had existed in fact and whether it had done so "for such a duration of time that the District should have been aware of it [by the] exercise [of] reasonable care" and in time to remedy it or warn against it. *Lynn*, 734 A.2d at 171. No specialized questions about the mechanics of leaky shower pipes or stalls or minimal standards in prison settings for the inspection or maintenance of such facilities would be presented (Cosio having proffered no expert on those subjects). Because the issues of fact Cosio instead raises are within the knowledge of lay jurors, expert testimony would not be required to resolve them.[2]

2. The trial court mistakenly read *Harding v. District of Columbia*, 178 A.2d 920 (D.C. 1962), as requiring expert testimony in a no-

tice case such as this. The plaintiff's suit failed in *Harding* because "[t]he record [was] devoid of any direct testimony" of actual or

Accordingly, we reverse and remand the case for further proceedings consistent with this opinion, beginning with resolution of the alternative grounds (contributory negligence and assumption of risk) on which the District moved for summary judgment.

*Reversed and remanded.*

---

constructive notice of the hazard by the District. *Id.* at 922. Although the plaintiff had produced photographs of the accident site taken several days later, we held that they could not properly inform a jury of the duration of the hazard—specifically whether it stemmed from "a recent break [in a sidewalk]" or from "a gradual deterioration in the area"—"unaided by any testimony from a

person qualified to express an opinion on this point." *Id.* Cosio, unlike the *Harding* plaintiff, has proffered his own and a fellow prisoner's "direct testimony" as to why the prison authorities knew or should have known of the accumulation of water; although not experts, they are each "qualified to express an opinion" on that point.